STATE of Indiana, Appellant–Plaintiff,

v.

Wesley J. BROWN, Appellee–Defendant.

No. 63A04–0506–CR–302.

Court of Appeals of Indiana.

Jan. 17, 2006.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for Appellant.

Michael C. Keating, Keating, Bumb, Vowels & LaPlante, Evansville, for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

The State appeals from the trial court's grant of Wesley Brown's motion to suppress evidence. The State presents a single issue for our review, namely, whether the trial court erred when it suppressed evidence seized as a result of a warrant unsupported by sworn testimony.[1]

We affirm.[2]

### FACTS AND PROCEDURAL HISTORY

On September 18, 2003, Officer Lisa Miller of the Jasper Police Department appeared before the trial court to obtain a search warrant for Brown's residence. The court heard probable cause testimony from Officer Miller and issued the warrant. The transcript of the recorded hearing reveals that Officer Miller was not under oath when she testified.[3]

Approximately three hours after the trial court issued the warrant, Jasper police

---

1. Throughout this opinion we refer to the "oath or affirmation" requirement and the "sworn testimony" requirement in the Indiana warrant statute interchangeably.

2. We heard oral argument in this case at Orleans High School in Orange County on October 31, 2005. We thank our hosts, Judge Larry Blanton of the Orange Circuit Court, Social Studies Instructor Sean Steele, and Orleans High School Principal Gary McClintic.

3. The State claims that the judge who heard the probable cause testimony, in a subsequent affidavit, "affirmed his practice of always placing witnesses under oath but [on that] occasion the oath was administered before the recording device for the hearing was activated." Appellant's Brief at 2. In truth, that judge stated, "While I have no independent

officers, including Officer Miller, served the warrant and searched Brown's residence. They discovered methamphetamine oil, precursors to the manufacture of methamphetamine, evidence of a methamphetamine lab, and marijuana. The officers arrested Brown, and the State charged him with Dealing in Methamphetamine, as a Class B felony; Possession of Precursors with Intent to Manufacture Methamphetamine, as a Class D felony; Possession of Methamphetamine, as a Class D felony; and Possession of Marijuana, as a Class A misdemeanor.

On February 7, 2005, Brown filed a motion to suppress the evidence seized from his home, alleging that the search warrant was invalid because Officer Miller ·was not sworn when she gave probable cause testimony. At the suppression hearing, the prosecutor conceded that Officer Miller had not been under oath when she testified. The trial court granted Brown's motion to suppress. The State now appeals.

### DISCUSSION AND DECISION

■ When the State appeals from the trial court's grant of a defendant's motion to suppress evidence, the State is appealing from a negative judgment. *State v. Davis,* 770 N.E.2d 338, 340 (Ind.Ct.App. 2002). Consequently, the State has the burden of demonstrating to us that the evidence is without conflict and that the evidence and all reasonable inferences therefrom lead to the conclusion opposite that reached by the trial court. *Id.* During our review, we consider only the evidence most favorable to the judgment, and we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.*

The State contends that the trial court erred when it granted Brown's motion to suppress the evidence seized from his residence. Although the State concedes that the warrant was defective, it maintains that the good faith exception to the exclusionary rule renders the search of Brown's residence valid and the evidence seized during that search admissible. Thus, the dispositive issue is whether the good faith exception in the Indiana warrant statute applies where, as here, an officer's probable cause testimony was unsworn. We hold that it does not.

### The Indiana Warrant Statute

■ While the Fourth Amendment to the United States Constitution contains the general warrant requirement, we are bound to decide the present case on nonconstitutional grounds, if possible. Our Supreme Court has repeatedly held that it "will not decide constitutional questions when the case under consideration can be concluded upon other grounds[.]" *State v. Pearson Constr. Co.,* 236 Ind. 602, 141 N.E.2d 448, 450 (1957). "It is long established that a constitutional question unnecessary to a determination of the merits should not be decided." *Bureau of Motor Vehicles v. Scott,* 497 N.E.2d 557, 559 (Ind. 1986). "Both state and federal courts traditionally foreswear deciding a constitutional question unless no non-constitutional grounds present themselves for resolving the case under consideration." *Citizens Nat'l Bank of Evansville v. Foster,* 668 N.E.2d 1236, 1241 (Ind.1996). Thus, because the Indiana General Assembly has codified the requirements to obtain a warrant, we begin our analysis with a review of the Indiana warrant statute.

recollection of this particular probable cause hearing, a review of the transcript of the proceeding suggests [that the oath was administered before the audio recorder was ac-

tivated]." Appellant's App. at 42. In any event, the State conceded at the suppression hearing that Officer Miller was not under oath when she presented testimony.

The Indiana Code states, "A court may issue warrants *only* upon probable cause, *supported by oath or affirmation* ...." Ind.Code § 35–33–5–1(a) (emphasis added). Section 35–33–5–2 details the affidavit requirement, and Section 35–33–5–8 states the exception to the affidavit requirement. In particular, Section 8 provides:

A judge may issue a search or arrest warrant without [an] affidavit ... if the judge receives *sworn testimony* of the same facts required for an affidavit:

(1) In a nonadversarial, recorded hearing before the judge;

(2) Orally by telephone or radio; or

(3) In writing by facsimile transmission (FAX).

Ind.Code § 35–33–5–8(a) (emphasis added). In the present case, the State concedes that Officer Miller did not testify under oath and, therefore, that the statute's sworn testimony requirement was not satisfied. But the State maintains that the trial court erred when it suppressed the evidence because the officers reasonably believed that the warrant was valid.

### The Good Faith Exception

 In 1983, one year before the United States Supreme Court's landmark opinion in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984),

our legislature codified a good faith exception to the exclusionary rule.[4] That statute provides, in pertinent part:

(a) In a prosecution for a crime or a proceeding to enforce an ordinance or a statute defining an infraction, the court may not grant a motion to exclude evidence on the grounds that the search or seizure by which the evidence was obtained was unlawful if the evidence was obtained by a law enforcement officer in good faith.

(b) For purposes of this section, evidence is obtained by a law enforcement officer in good faith if:

(1) It is obtained pursuant to:

(A) A search warrant that was *properly issued* upon a determination of probable cause by a neutral and detached magistrate, that is free from obvious defects other than nondeliberate errors made in its preparation, and that was *reasonably believed* by the law enforcement officer to be valid.

Ind.Code § 35–37–4–5 (emphasis added). Although the State mentions Indiana Code Section 35–37–4–5, it concentrates its appellate argument on the *Leon* good faith exception. We will, however, first address the good faith exception enacted by the Indiana General Assembly before *Leon.*

**4.** To deter Fourth Amendment violations, the United States Supreme Court created the exclusionary rule and, in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), extended its application to the states via the Fourteenth Amendment. Under the exclusionary rule, evidence obtained through an illegal search and seizure is inadmissible at trial. *State v. Haines,* 774 N.E.2d 984, 991 (Ind.Ct.App.2002) (citing *Mapp,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081), *trans. denied.* However, the exclusionary rule does not require the suppression of evidence obtained in reliance on a defective search warrant if the police relied on the warrant in objective good

faith. *Id.* (citing *Leon,* 468 U.S. at 922, 104 S.Ct. 3405).

In 1985, this court held that the *Leon* good faith exception was applicable in Indiana. *Mers v. State,* 482 N.E.2d 778, 783 (Ind.Ct. App.1985) ("Because the Indiana exclusionary rule has historical ties to the federal rule, and because Article I, Section 11 of the Indiana Constitution contains substantially identical language as the fourth amendment, we fail to find any compelling reason for rejecting the Leon good faith exception in Indiana, at least until such time as experience convinces us that the exception is unworkable or subject to abuse.").

The search warrant in this case was not properly issued because, as previously discussed, Officer Miller did not provide sworn probable cause testimony. Nevertheless, the State maintains that the lack of an oath or affirmation to support Officer Miller's testimony should not result in suppression of the evidence seized because the officers who executed the warrant reasonably believed that the warrant was valid. *See* Ind.Code § 35–37–4–5(b)(1)(A). We cannot agree. In order to satisfy the good faith exception, the warrant must first be "properly issued." *See id.* And a warrant is not properly issued unless it is supported by oath or affirmation. *See* Ind. Code § 35–33–5–1(a).

### Indiana Good Faith Precedent

The defect that troubles the warrant in this case is unlike the non-material warrant defect we recently confronted in *Dost v. State*, 812 N.E.2d 232 (2005), *trans. denied.* In *Dost*, the warrant included an inexact description of the defendant's residence, and it did not contain Dost's address. But the probable cause affidavit that accompanied the warrant did include the proper address. This court concluded:

> The inexact description of the residence included in the warrant does not invalidate the warrant because [the officer], who provided the description, knew the exact location of the residence and led the officers to the residence to serve the search warrant. In addition, the exact address of the residence was contained in the affidavit, and the affiant ... participated in the execution of the search warrant by, among other things, serving the warrant on Dost.

*Dost*, 812 N.E.2d at 236. Here, however, there is no cure for Officer Miller's failure to present sworn testimony.

Our opinion in *State v. Davis*, 770 N.E.2d 338 (Ind.Ct.App.2002), is on point. In *Davis*, we held that the good faith exception did not apply where a warrant conversation was not recorded, and therefore, was not properly issued, as required by Indiana Code Section 35–33–5–8(b). *Id.* at 342–43. In that case, the lack of a recording "prevented independent verification of several statutory requirements including whether (1) [the officer] recited and verified the facts *under penalty of perjury*, (2) [the officer] read to the judge from the warrant form, and (3) whether the judge directed [the officer] to modify the warrant." *Davis*, 770 N.E.2d at 343 (emphasis added). And while the obvious defect in the present case, the lack of sworn testimony, was not deliberate, it was substantial. *See id.*

Nevertheless, the State asks, in effect, that we ignore the plain meaning of the words "oath or affirmation" and "sworn testimony" in the warrant statute. *See* Ind.Code § 35–33–5–1; Ind.Code § 35–33–5–8. An appellate court must construe a statute according to its plain meaning. *Township v. Hunnicutt*, 549 N.E.2d 1051, 1054 (Ind.Ct.App.1990). Words and phrases shall be taken in their plain, ordinary and usual sense unless a different purpose is manifested by the statute itself. *Id.* This is the cardinal rule of statutory construction. *See* Ind.Code § 1–1–4–1 ("Words and phrases shall be taken in their plain, or ordinary and usual sense.")

If we were to disregard the oath or affirmation requirement it would open wide the door to the issuance of unlawful warrants. Thus, we must decline the State's invitation and, instead, adhere strictly to the unambiguous sworn testimony provision in the warrant statute. No judicial interpretation of this text is required. The plain meaning of "sworn testimony" is readily apparent. Our citizens have a right to rely on the plain text of the warrant statute grounded in the constitu-

tional mandate that no warrants shall issue unless supported by an oath or affirmation. *See* Ind. Const. art. I, § 11; U.S. Const. amend IV. We hold that an oath or affirmation is a condition precedent to a properly issued search warrant under the Indiana warrant statute.

We also hold that the lack of sworn testimony cannot be overcome by the Indiana good faith exception. That exception provides, in relevant part, that "evidence is obtained by a law enforcement officer in good faith if the law enforcement officer, at the time he obtains the evidence, has satisfied the applicable minimum basic training requirements established by the rules adopted by the law enforcement training board ...." Ind.Code § 35–37–4–5(b)(2). We conclude that no Indiana judge, attorney, or law enforcement officer qualified under Indiana Code Section 35–37–4–5(b)(2), could have a reasonable belief that a warrant issued without sworn testimony was valid. And here Officer Miller, a twelve-year veteran of the Jasper Police Department, both sought and executed the warrant. Thus, she could not have had a reasonable belief that the warrant was valid. *See Newby v. State,* 701 N.E.2d 593, 603 (Ind.Ct.App.1998) (concluding that a search was not executed in objective good faith where the same officers that provided and presented misleading information in the affidavit actively participated in the subsequent search of the defendant's residence). We hold that the good faith exception in the Indiana warrant statute has not been satisfied and that the trial court did not err when it suppressed the evidence seized under a warrant that was not properly issued. *See* Ind.Code § 35–37–4–5.

### The *Leon* Good Faith Exception

Notwithstanding the Indiana warrant statute, the State focuses its appellate argument almost entirely on *Leon* and

equates the Indiana and *Leon* good faith exceptions, as if they were one and the same. As we have already noted, the Indiana good faith exception was enacted before *Leon* was decided. Thus, the Indiana statute is not the codification of a rule created by the federal judiciary but an independent act of our own legislature.

■■ It is well settled that a state may provide greater protection from searches and seizures than the Fourth Amendment requires. We have recognized that:

The [United States] Constitution operates to provide at least a minimal protection to citizens no matter in what state the issues may arise. However, it by no means limits the expansiveness of rights provided to those in a particular state, which may freely provide greater protection of individual liberty than the federal Constitution requires.

*Hines v. Caston Sch. Corp.,* 651 N.E.2d 330, 338 (Ind.Ct.App.1995) (quoting *Moran v. State,* 625 N.E.2d 1231, 1236 (Ind.Ct. App.1993), *vacated by,* 644 N.E.2d 536 (Ind.1994), *reh'g denied* ). "[T]he principle that a state may provide its citizens greater protection than that required by the federal Constitution [is] a pillar of federalism." *Id.* at 338 n. 3.

■ Thus, our interpretation of the good faith exception in the Indiana warrant statute does not depend upon *Leon.* Our opinion rests on separate, adequate, and independent state grounds. *See Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). But a state court may look to federal authority for guidance. *See id.* And we may consider Fourth Amendment history, text, and jurisprudence to assist in our understanding of the Indiana warrant statute.

### The Origin and History of the Fourth Amendment

The Fourth Amendment's oath or affirmation requirement is deeply rooted in

American history. The origin of the Fourth Amendment is attributed to "the colonists' desire to eliminate from their government the considerable disregard for privacy rights that had characterized the British government from the fourteenth century to the time of the American Revolution." J. Donald Hobart, Jr., *Illinois v. Krull: Extending the Fourth Amendment Exclusionary Rule's Good Faith Exception to Warrantless Searches Authorized by Statute*, 66 N.C. L.Rev. 781, 800 n. 49 (1988).

> The two chief instruments of unreasonable search during this period were writs of assistance and general warrants. Nelson B. Lasson, The History and Development of the Fourth Amendment to the United States Constitution 23–27, 31–50, 51–78 (1937). Writs of assistance were granted routinely and gave general search powers to organized trades to enforce regulations and protect their monopolies. *Id.* General warrants were issued by the government typically to control the printing industry and censor "seditious" publications. *Id.* These warrants and writs granted tremendous discretion to the individuals bearing them. Often they would fail to specify the persons and places to be searched, and their issuance was based on neither probable cause nor oath. *See, e.g.,* Lasson at 26–27.

Hobart, Jr., 66 N.C. L.Rev. at 800 n. 49. Indeed, "[writs of assistance] conferred broad discretionary powers upon individual officials to enter homes and shops in search of contraband." Timothy Lynch, *In Defense of the Exclusionary Rule*, 23 Harv. J.L. & Pub. Pol'y 711, 720 (2000).

"In 1761, after public resentment over snooping customs officials and their oppressive search tactics had reached the boiling point, a group of Boston merchants retained attorney James Otis to challenge the legality of the writs of assistance. The case was closely watched." *Id.* at 721–22. In fact, Otis's forceful speech became one of the most famous legal arguments in the annals of American law:

> I will to my dying day oppose with all the powers and faculties God has given me all such instruments of slavery, on the one hand, and villainy, on the other, as this writ of assistance is. It appears to me the worst instrument of arbitrary power, the most destructive of English liberty and the fundamental principles of law, that was ever found in an English lawbook ... The writ prayed for in this petition, being general, is illegal. It is a power that places the liberty of every man in the hands of every petty officer... A man's house is his castle; and whilst he is quiet, he is as well guarded as a prince in his castle. This writ, if it should be declared legal, would totally annihilate this privilege. Customhouse officers may enter our houses when they please; we are commanded to permit their entry... Bare suspicion *without oath* is sufficient... Every man prompted by revenge, ill humor, or wantonness to inspect the inside of his neighbor's house may get a writ of assistance.

*Id.* (quoting James Otis, Speech on the Writs of Assistance (1761), in 1 John Wesley Hall, Jr., Search and Seizure, 7 n. 35 (2d ed.1991)) (emphasis added).

"Although Chief Justice Hutchinson and his colleagues upheld the legality of the writs, historians generally credit Otis's fiery speech as being 'the first in the chain of events which led directly and irresistibly to revolution and independence.'" *Id.* (citation omitted). John Adams, who was in attendance to hear Otis's argument, said that every man in that crowded audience "appeared to me to go away, as I did, ready to take up arms against writs of assistance. Then and there was the first

scene of the first act of opposition to the arbitrary claims of Great Britain. Then and there the child Independence was born." *Id.* (citation omitted).

Recently, the Wisconsin Supreme Court summarized the history of the Fourth Amendment's oath or affirmation requirement as follows:

> The colonists viewed the Writs of Assistance as fundamental violations of their basic right to be undisturbed in their person and property. The "perceived abuses ... were among the most deeply felt grievances held by the colonists against British government." Sanford H. Kadish, Encyclopedia of Crime and Justice 1416 (1983). Following independence, each of the state constitutions guaranteed individuals the right to be free from unreasonable searches and seizures. In 1776, the Pennsylvania Constitution made an oath or affirmation essential to the validity of a warrant. The Pennsylvania provision was the basis for the Fourth Amendment to the U.S. Constitution, which included the oath or affirmation language. The states ratified the Fourth Amendment in 1791 as part of the Bill of Rights.

*State v. Tye*, 248 Wis.2d 530, 636 N.W.2d 473, 476 (2001).

It is undeniable that "a valid oath is a constitutional condition precedent to the use of evidence." J.H.C., *Note: The Constitutionality of the Use of Unrecorded Oral Testimony to Establish Probable Cause for Search Warrants*, 70 Va. L.Rev. 1603, 1615 (1984). "Mere affirmance of belief or suspicion is not enough." *Id.* (quoting *Nathanson v. United States*, 290 U.S. 41, 47, 54 S.Ct. 11, 78 L.Ed. 159 (1933); *Frazier v. Roberts*, 441 F.2d 1224, 1227 (8th Cir.1971)). With that historical foundation in mind, we proceed to address the State's contention that the *Leon* objective good faith exception controls.

## State Precedent Applying Leon

■ The Indiana Supreme Court has recognized the essential nature of the oath or affirmation requirement in applying a warrant statute. Seventy-five years ago, in *Thompson v. State*, 190 Ind. 363, 367, 130 N.E. 412, 413 (1921), our supreme court interpreted a different warrant statute and held that an "affidavit sworn to before the judge," but not filed with the court until two weeks after a warrant was issued and served "was not supported by 'oath or affirmation' as required by the [Indiana] constitutional provision against unreasonable search and seizure, and was illegal." We are unaware, however, of any Indiana case that has addressed whether the *Leon* good faith exception applies to a search warrant issued without an oath or affirmation. Thus, we look to cases from other jurisdictions that have addressed that issue.

The State relies on *People v. Leonard*, 50 Cal.App.4th 878, 57 Cal.Rptr.2d 845 (1996). In *Leonard*, a California Deputy Sheriff, Shane Redmond, submitted a "Statement of Probable Cause" to the magistrate explaining that he had observed marijuana plants on Troy Leonard's property. *Leonard*, 57 Cal.Rptr.2d at 847. Officer Redmond attached an affidavit to the "Statement of Probable Cause," but the affidavit did not contain sworn facts, which are required to establish probable cause. In addition, the "'Statement of Probable Cause' ... did not contain either the verification or the signature of Officer Redmond." *Id.*

The magistrate issued the warrant, and officers executing the warrant found more than one hundred marijuana plants in a barn and sales paraphernalia in and about the residence. The State charged Leonard with cultivation of marijuana and possession of marijuana for sale. He filed a motion to suppress and alleged that the

search warrant was defective because the magistrate had relied on information that was not verified under penalty of perjury. The trial court denied Leonard's motion. He was convicted and appealed.

The California Court of Appeal found that "[t]he failure of the affiant to swear to the truth of the information given to the magistrate [is not] a 'technical' defect. It is a defect of substance, not form." *Id.* at 848. Thus, the court concluded that the unsworn facts presented in support of the "Statement of Probable Cause" rendered the search warrant defective. *Id.* at 848–49.

But the court then considered whether the evidence was admissible under the *Leon* good faith exception. The court stated, "[w]hile police officers may be trained to scan the affidavit to verify the existence of probable cause to search, they are not expected to be legal scholars, grammarians or proofreaders." *Id.* at 849. Indeed, the "failure of the affidavit to verify under oath the truth of the statements in the 'Statement of Probable Cause' was a defect that could be detected only by careful examination of the two documents by one with legal training." *Id.* Ultimately, the court held that the warrant was not " 'so facially deficient . . . that the executing officer could not reasonably presume it to be valid,' " *Id.* (quoting *Leon*, 468 U.S. at 923, 104 S.Ct. 3405), and, therefore, the police reasonably relied on the magistrate's issuance of the warrant and the evidence was admissible under the *Leon* "good faith" exception. *Id.*

■ The State contends that, here, as in *Leonard*, the good faith exception applies and that the evidence is admissible, in part, because "Officer Miller did all she could do to obtain a valid warrant." Appellant's Brief at 7. The State reasons that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Id.* (citing *Leon*, 468 U.S. at 916, 104 S.Ct. 3405). The State's argument is well taken as far as it goes. The exclusionary rule, however, is designed not only to deter police misconduct but also to ensure that warrants are properly issued. Here, the absence of verification is not a mere error but a fatal defect in the issuance of the warrant.

The facts in this case are easily distinguishable from those in *Leonard*, where Officer Redmond submitted two documents, an affidavit and a separate "Statement of Probable Cause," which contained the information relied on by the magistrate. *Leonard*, 57 Cal.Rptr.2d at 848–49. The affidavit did not support the warrant since it set forth "only the officer's sworn belief in the existence of probable cause, a legal determination which is exclusively vested in the courts." *Id.* at 849. But the court concluded that a cursory examination of the two documents together would lead an officer to believe that the oath or affirmation requirement had been satisfied. The same cannot be said here.

In the present case, Officer Miller provided neither an affidavit nor any sworn testimony. Thus, the California Court of Appeal's statement regarding an officer's role in the warrant process does not apply because, here, there was no document for the officers who executed the warrant to examine for a defect. Further, as Officer Miller was one of the officers who executed the warrant, she either knew or should have known of the fatal defect in this particular warrant. On these facts, the *Leonard* rationale is inapposite.

■ But the recent unanimous Wisconsin Supreme Court opinion in *State v. Tye*, 248 Wis.2d 530, 636 N.W.2d 473 (2001), is persuasive. In *Tye*, an opinion authored by Chief Justice Abrahamson, the court

addressed whether the good faith exception applied to evidence seized pursuant to a search warrant that was unsupported by any statement under oath. First, the court examined the warrant requirement in the Wisconsin Constitution and state statutes and considered the history and importance of the oath requirement. The court stated that the oath or affirmation requirement is "an essential prerequisite to obtaining a valid search warrant under the [Wisconsin] constitution." *Tye*, 636 N.W.2d at 477. And, we note, the warrant requirements in the Wisconsin and Indiana Constitutions are identical.[5] The Wisconsin Supreme Court continued:

> The purpose of an oath or affirmation is to impress upon the swearing individual an appropriate sense of obligation to tell the truth. An oath or affirmation to support a search warrant reminds both the investigator seeking the search warrant and the magistrate issuing it of the importance and solemnity of the process involved. An oath [ ] protects the target of the search from impermissible state action by creating liability for perjury or false swearing for those who abuse the warrant process by giving false or fraudulent information.

*Id.* at 479. Ultimately, the court refused to "extend the good faith exception to a warrant issued on the basis of a statement that totally lacks an oath or affirmation." *Id.* And the court concluded, just as we hold, that, "[t]he exclusionary rule applies when no oath or affirmation supports a search warrant . . . ." *Id.*

⬛ Justice Crooks concurred in a separate opinion solely "to explain further

why the good faith exception to the exclusionary rule does not apply." *Tye*, 636 N.W.2d at 480. He concluded that, "[a] warrant that totally lacks an oath or affirmation is so facially deficient that reliance upon the warrant is unreasonable. An officer, who obtains or executes a search warrant unsupported by an oath or affirmation, cannot reasonably rely on that warrant." *Id.* Thus, as we have also determined, an officer cannot have a reasonable belief in, or objective good faith reliance on, a warrant entirely unsupported by an oath or affirmation.

Even without considering precedent from other states, this case is readily distinguishable from *Leon*. In *Leon*, the question before the Court was whether the exclusionary rule bars evidence obtained by officers acting in reasonable reliance on a search warrant that was ultimately found to be unsupported by probable cause. *Leon*, 468 U.S. at 900, 104 S.Ct. 3405. In addressing that issue the Court in *Leon* noted that, "Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause . . . ." *Id.* at 914, 104 S.Ct. 3405. Indeed, whether probable cause exists is subject to judicial review and differing opinions. *See id.* at 915, 104 S.Ct. 3405. "[A] reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable cause determination reflected an improper analysis of the totality of the circumstances." *Id.*; *see Houser v. State*, 678 N.E.2d 95 (Ind.1997) (" 'Reviewing court' for these purposes includes both the trial court ruling on a motion to exclude the seized evidence and

---

**5.** Both sections state:

The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

*See* Ind. Const. art. I, § 11; Wis. Const. art. I, § 11.

the appellate court reviewing that decision.").

While the issue in *Leon* was probable cause, here the issue is whether the good faith exception applies to a warrant unsupported by sworn testimony. Unlike probable cause itself, whether probable cause testimony was supported by an oath or affirmation presents a discrete question and is not subject to the detailed fact-sensitive inquiry which often accompanies judicial review of a probable cause determination.

■■■■ We note further that both the exclusionary rule, *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684 (1961), and the good faith exception to the exclusionary rule, *Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), are creatures of the judiciary. But the requirement that a warrant shall issue only upon an oath or affirmation is found in the plain text of the Warrant Clause, not in a judicial pronouncement. The oath or affirmation requirement is not a mere technicality but is an essential and indispensable part of the warrant requirement:

> [The Fourth Amendment's] oath or affirmation [requirement] "is designed to ensure that the truth will be told by insuring that the witness or affiant will be impressed with the solemnity and importance of his words. The theory is that those who have been impressed with the moral, religious or legal significance of formally undertaking to tell the truth are more likely to do so than those who have not made such an undertaking or been so impressed."

*United States v. Brooks*, 285 F.3d 1102, 1105–06 (8th Cir.2002) (quoting *United States v. Turner*, 558 F.2d 46, 50 (2nd Cir.1977)), *cert. denied.* "An oath preserves the integrity of the search warrant process and thus protects the constitution-

ally guaranteed fundamental right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." *State v. Tye*, 248 Wis.2d 530, 636 N.W.2d 473, 478 (2001). "The oath requirement is no technical or trivial component of the Warrant Clause of the Fourth Amendment." *United States v. Chapman*, 954 F.2d 1352, 1370 (7th Cir. 1992); *see also* Lynn B. Oberlander, *A First Amendment Right of Access to Affidavits in Support of Search Warrants*, 90 Colum. L. Rev. 2216, 2241 (1990) ("The requirement of an oath or affirmation reminds the executive seeking the warrant and the magistrate granting it of the importance of the process."). And many years ago, our own supreme court explained the rationale for the oath requirement, whether the oath is contained within an affidavit or given before oral testimony, as follows: "[T]he magistrate ought to have before him the oath of the real accuser, presented either in the form of an affidavit, or taken down by himself by personal examination, exhibiting the facts on which the charge is based and on which the belief or suspicion of guilt is founded." *Wallace v. State*, 199 Ind. 317, 332, 157 N.E. 657 (1927) (citation omitted).

In *Leon*, the Supreme Court stated, "evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Leon*, 468 U.S. at 919, 104 S.Ct. 3405 (quoting *United States v. Peltier*, 422 U.S. 531, 542, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975)). Here, given that Officer Miller both sought and executed the warrant, she either had knowledge or may be properly charged with knowledge that the search violated the Fourth Amendment. Thus, even if the

Indiana warrant statute were not dispositive, *Leon* would not salvage this warrant.

Finally, we have recognized that "care should be taken when applying [the good faith] exception to ensure that [it] does not swallow the exclusionary rule." *Caudle v. State,* 749 N.E.2d 616, 621 (Ind.Ct.App. 2001) (citations omitted), *aff'd on reh'g, trans. denied.* On these facts, if we were to disregard the plain meaning of the warrant statute, much less the text of the Fourth Amendment, the exception would almost certainly consume the exclusionary rule. To reiterate, the oath or affirmation requirement is not a creature of the judiciary. The oath or affirmation requirement is in the plain text of the Fourth Amendment, and it is a constitutional prerequisite for the issuance of a valid warrant. Thus, the State's reliance on the *Leon* good faith exception is misplaced, and the trial court did not err when it suppressed evidence seized pursuant to an unlawful warrant.

## CONCLUSION

We affirm the trial court's suppression of evidence seized as a result of a warrant unsupported by sworn testimony. It is clear from the text of the Indiana warrant statute that a warrant is properly issued "only ... [when] supported by oath or affirmation." Ind.Code § 35–33–5–1(a). Here, there was no affiant. Officer Miller did not give sworn testimony, and the warrant was void at its inception.

Further, the Indiana good faith exception does not apply, and it does not render the evidence admissible because its requirements were not satisfied. Specifically, (1) the warrant was not properly issued; (2) it was not free from obvious defects; and (3) Officer Miller could not have reasonably believed that it was valid. *See* Ind.Code § 35–37–4–5(b)(1)(A). And neither does the *Leon* good faith exception

render the search valid and the evidence seized admissible.

Our conclusion is further validated when measured against the six criteria that judges usually consider when interpreting statutes and constitutional provisions: language, history, tradition, precedent, purpose, and consequences. Justice Breyer has noted that when faced with difficult questions of statutory or constitutional interpretation:

All judges use similar basic tools to help them accomplish the task. They read the *text's language* to along with related language in other parts of the document. They take account of its *history*, including history that shows what the language likely meant to those who wrote it. They look to *tradition* indicating how the relevant language was, and is, used in the law. They examine *precedents* interpreting the phrase, holding or suggesting what the phrase means and how it has been applied. They try to understand the phrase's *purposes* or (in respect to many constitutional phrases) the value that it embodies, and they consider the likely *consequences* of the interpretive alternatives, valued in terms of the phrase's purposes.

Stephen Breyer, *Active Liberty: Interpreting Our Democratic Constitution* 7–8 (2005). (emphasis added).

Here, the text, history, tradition and precedent related to the oath or affirmation requirement lead unerringly to the conclusion we have reached. And the purpose and consequences criteria also support our conclusion. First, the oath or affirmation requirement is not found in a penumbra or emanation but in the plain text of the warrant statute and in the Fourth Amendment. It is both a statutory and a constitutional command. Second, the history of the Fourth Amendment reveals the importance of the oath require-

ment and informs our understanding of the warrant statute. Based on their experience, the colonists, upon obtaining their independence, made an oath or affirmation a specific condition for the issuance of a warrant.

Likewise, the tradition of the oath or affirmation requirement and precedent interpreting that requirement reinforce our holding that the Indiana good faith exception cannot cure a warrant that is not supported by an oath or affirmation. Both the Indiana Supreme Court and the Wisconsin Supreme Court have held that a warrant unsupported by an oath or affirmation is invalid. *See Thompson v. State*, 190 Ind. 363, 130 N.E. 412 (1921); *see also*, *State v. Tye*, 248 Wis.2d 530, 636 N.W.2d 473 (2001). It is well settled that the purpose of the Fourth Amendment's oath or affirmation requirement is to "ensure that the truth will be told by insuring that the witness or affiant will be impressed with the solemnity and importance of his words." *Brooks*, 285 F.3d at 1105–06 (quoting *Turner*, 558 F.2d at 50). And we must consider the consequences, that to hold otherwise and to disregard the clear command that an oath or affirmation is required would eviscerate the warrant process.[6] Thus, we do not hesitate to con-

clude that the trial court did not err when it suppressed evidence seized as a result of a warrant unsupported by sworn testimony.

Affirmed.

BAKER, J., and RILEY, J., concur.

---

**6.** Likewise, in the civil law, there is often a verification requirement for pleadings, motions, petitions, and affidavits. *See* Ind. T.R. 11(B). Trial Rule 11(B) provides, in pertinent part:

When in connection with any civil or special statutory proceeding it is required that any pleading, motion, petition, supporting affidavit, or other document of any kind, be verified, or that an oath be taken, it shall be sufficient if the subscriber simply affirms the truth of the matter to be verified by an affirmation or representation in substantially the following language:

"I (we) affirm, under the penalties of perjury, that the foregoing representation(s) is (are) true.
(Signed) _____."

*Id.*
"[T]he essential purpose of a verification is that the statements be made under penalty of perjury. In other words, a petitioner must use some language to indicate that the statements contained in a petition are true in order for that petition to be adequately verified." *Gary Community Mental Health Center, Inc. v. Indiana Dep't of Public Welfare*, 496 N.E.2d 1345, 1347 (Ind.Ct.App.1986) (citations omitted). Thus, similar policy reasons—accountability and truthfulness—buttress the oath or affirmation requirement of the United States and Indiana constitutions and the verification requirement of Trial Rule 11(B), thereby highlighting the essential nature of those conditions.