## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 08 2019, 6:04 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Assistant Section Chief, Criminal
Appeals
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

John D. Fierek
Fierek Legal Group
Brownsburg, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

State of Indiana,

*Appellant-Plaintiff,*

v.

Wesley Ryder,

*Appellee-Defendant.*

August 8, 2019

Court of Appeals Case No.
18A-CR-2325

Appeal from the Marion Superior
Court

The Honorable Ronnie Huerta,
Magistrate

Trial Court Cause No.
49G09-1506-F6-19537

**Barnes, Senior Judge.**

# Statement of the Case

The State of Indiana appeals the trial court's grant of Wesley Ryder's motion to suppress. We affirm.

# Issues

The State raises three issues, which we consolidate and restate as:

    I.    Did the trial court err in determining the search warrant for a blood draw was invalid?

    II.    If the search warrant is invalid, are the results of the blood draw admissible under the good faith exception to the exclusionary rule?

# Facts and Procedural History

In the early morning hours of June 4, 2015, Indiana State Trooper Robert Augst was dispatched to investigate an auto accident on Interstate 465 in Marion County. He encountered several people at the scene, including Ryder. A person told Trooper Augst that Ryder had driven the wrong way on the highway and crashed into his car. That person also stated Ryder had no passengers.

Trooper Augst noted that Ryder displayed bloodshot eyes and slurred speech. He asked Ryder to perform a field sobriety test, which Ryder failed. Next, Trooper Augst asked Ryder to take a portable breath test, which Ryder refused. The trooper handcuffed Ryder, read him his *Miranda* warnings, and also read

him an implied consent advisement.  Trooper Augst asked Ryder to take a certified chemical breath test, and Ryder refused.

[5]     Next, Trooper Augst put Ryder in his car and drove to the Marion County Arrestee Processing Center ("APC") to obtain a search warrant for a blood draw.  When he arrived, he was told that a judge would not be available until after 7:00 a.m.  In the meantime, the trooper prepared a probable cause affidavit and a proposed search warrant with the assistance of a deputy prosecutor.  An employee of the Marion County Clerk's Office  ("the Clerk") created a cause number for the search warrant.

[6]     Court staff contacted Judge Barbara Crawford, who agreed to meet Trooper Augst at a gas station.  He took the probable cause affidavit and search warrant with him to the gas station.  Judge Crawford met with the trooper and reviewed the documents.  She signed the search warrant at 7:44 a.m.

[7]     Trooper Augst took Ryder to Eskenazi Hospital, where a blood draw was performed at 8:12 a.m.  We know the draw occurred at that time because the probable cause affidavit included a blank for the time of the draw, and Trooper Augst did not fill in the blank until the draw occurred.  The hospital kept copies of the affidavit and search warrant.  The blood sample was subsequently submitted for testing, which revealed Ryder had a blood alcohol concentration of 0.11%.

[8]     After the blood draw was complete, Trooper Augst returned Ryder to the APC.  While the trooper was there, he deposited the warrant and probable cause

affidavit in a box for the Clerk.  An entry was made on the Clerk's docket at 11:17 a.m., indicating the probable cause affidavit and search warrant had been filed.  The Clerk later lost the probable cause affidavit and search warrant, but the State obtained copies of those documents from the hospital.  The copies do not bear file-marks for June 4, 2015.

[9]     On June 5, 2015, the State charged Ryder with criminal recklessness, a Level 6 felony;[1] operating a vehicle while intoxicated in a manner endangering a person, a Class A misdemeanor;[2] and operating a vehicle with an alcohol concentration equivalent of .08 or more, a Class C misdemeanor.[3]  On September 3, 2015, the State moved to amend the charging information to add two new counts:  causing serious bodily injury while operating a vehicle while intoxicated, a Level 6 felony;[4] and causing serious bodily injury while operating a vehicle with an alcohol concentration equivalent of .08 or more, a Level 6 felony.[5]  The trial court granted the State's motion.

[10]    On June 6, 2018, Ryder filed a motion to suppress.  He alleged that collecting the blood sample had violated his federal and state constitutional protections against unreasonable search and seizure.  The court held a two-day hearing,

---

[1] Ind. Code § 35-42-2-2 (2014).

[2] Ind. Code § 9-30-5-2 (2001).

[3] Ind. Code § 9-30-5-1 (2001).

[4] Ind. Code § 9-30-5-4 (2013).

[5] Ind. Code § 9-30-5-4.

and both sides filed memoranda of law. On August 29, 2018, the court granted the motion to suppress as to evidence obtained from the blood draw, concluding the trooper had failed to file the probable cause affidavit before presenting it to the judge. The court further determined the blood draw test results were not admissible under the good faith exception to the exclusionary rule. This appeal followed.

# Discussion and Decision

## I. Standard of Review

[11] The State argues the trial court erred in granting Ryder's motion to suppress. We have previously stated:

> Generally we review a trial court's decision to grant a motion to suppress as a matter of sufficiency. On appeal, we will neither reweigh evidence nor judge witness credibility. Our role is to determine whether the record discloses substantial evidence of probative value that supports the trial court's decision. The State appeals from a negative judgment and must show that the trial court's ruling on the suppression motion was contrary to law.

*State v. Shipman*, 987 N.E.2d 1122, 1126 (Ind. Ct. App. 2013) (citations omitted). We review questions of law de novo. *State v. Campbell*, 905 N.E.2d 51, 54 (Ind. Ct. App. 2009), *trans. denied*.

## II. Search Warrant Filing Requirements

[12] The State first claims Trooper Augst timely filed the probable cause affidavit, and the search warrant was valid. To be valid, a warrant and its underlying

affidavit must comply with the Fourth Amendment prohibition on unreasonable searches and seizures, as well as Indiana constitutional and statutory law. *Gray v. State*, 758 N.E.2d 519, 521 (Ind. 2001). The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[13] Similarly, Article 1, section 11 of the Indiana Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

[14] The Indiana General Assembly has codified these federal and state constitutional requirements, stating "[a] court may issue warrants only upon probable cause, supported by oath or affirmation, . . . ." Ind. Code § 35-33-5-1(a) (2006). In addition:

> Except as provided in section 8 of this chapter, and subject to the requirements of section 11 of this chapter, if applicable, no warrant for search or arrest shall be issued *until there is filed with the judge an affidavit*:

(1) particularly describing:

(A) the house or place to be searched and the things to be searched for; or

(B) particularly describing the person to be arrested;

(2) alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that:

(A) the things sought are concealed there; or

(B) the person to be arrested committed the offense; and

(3) setting forth the facts known to the affiant through personal knowledge or based on hearsay, constituting the probable cause.

Ind. Code § 35-33-5-2 (2014) (emphasis added).

[15] The General Assembly has provided one exception to Indiana Code section 35-33-5-2's requirement that the State must file a probable cause affidavit before the trial court may issue a search or arrest warrant:

A judge may issue a search or arrest warrant without the affidavit required under section 2 of this chapter, if the judge receives testimony subject to the penalties for perjury of the same facts required for an affidavit:

(1) in a nonadversarial, recorded hearing before the judge;

(2) orally by telephone or radio;

(3) in writing by facsimile transmission (FAX); or

(4) in writing by electronic mail or other electronic transmission.

Ind. Code § 35-33-5-8 (2014).

[16] The State claims there is no evidence to support the trial court's factual determination that Trooper Augst failed to file the probable cause affidavit before taking it to Judge Crawford. We disagree. The most crucial evidence is the probable cause affidavit itself. The Clerk lost its copy of the affidavit, but the hospital had kept a copy. On June 4, 2015, the Marion County Clerk's Office had not yet implemented e-filing, so documents were still physically file-stamped as of that date. The hospital's copy of the probable cause affidavit does not have a file stamp, which indicates it had not been filed before Trooper Augst arrived at the hospital. In addition, a docket entry indicating the affidavit had been filed did not appear on the Clerk's docket until 11:17 a.m., which was after the trooper had returned the warrant to the Clerk's staff at the APC. This evidence supports the trial court's determination that Trooper Augst did not file the probable cause affidavit before presenting it to Judge Crawford.

[17] The State notes that a case number was assigned to this matter before Trooper Augst met with Judge Crawford, which the State claims is proof that the Clerk received the affidavit before Judge Crawford reviewed it. The State also cites to an unsworn email from a Clerk's employee stating: (1) the Clerk would not have assigned a case number without first being given the probable cause affidavit for filing; and (2) the Clerk's employees may have been busy when

Trooper Augst first arrived at the APC and could have delayed file-stamping the affidavit until much later in the morning. The trial court discounted the information in the employee's email because the employee conceded he had no personal knowledge about this case, and the court did not believe the employee's explanation about how and when the affidavit could have been filed. We will not reweigh credibility determinations.

[18] In the alternative, the State claims Trooper Augst timely filed the probable cause affidavit by giving it to Judge Crawford. In *Moseby v. State*, 872 N.E.2d 189, 192 (Ind. Ct. App. 2007), *trans. denied*, a panel of this Court determined that Indiana Code section 35-33-5-2's filing requirement is satisfied if a police officer leaves a copy of the probable cause affidavit with the judge. *See also Wilson v. State*, 263 Ind. 469, 333 N.E.2d 755, 761 (1975) (same).

[19] In Ryder's case, the probable cause affidavit included boilerplate language stating a copy of the affidavit and warrant had been "filed with the signing judge." Tr. Ex. Vol., State's Ex. 1. But Trooper Augst testified he could not remember whether he left copies of the documents with Judge Crawford, and there is no evidence that copies were later found in the judge's files or that she gave the copies to the Clerk. For these reasons, the holding set forth in *Moseby* and similar cases does not apply here. *See Johnson v. State*, 952 N.E.2d 305, 309-10 (Ind. Ct. App. 2011), *trans. denied* (search warrant invalid because probable cause affidavit was not properly filed with trial court; affidavit was not file-marked, and court staff did not retain a copy for their records).

[20] Finally, the State argues that even if the trooper did not file the probable cause affidavit until after Judge Crawford had signed the warrant, the delay is permissible because the trooper substantially complied with filing requirements. In *Bowles v. State*, 820 N.E.2d 739, 746 (Ind. Ct. App. 2005), *trans. denied*, an officer failed to file the probable cause affidavit before the magistrate issued the search warrant. The officer instead filed the documents the next day, after executing the warrant. A panel of this Court did not condone the officer's failure to comply with statutory requirements but concluded he had substantially complied, and suppression of the evidence under those circumstances would have been inappropriate. The Court noted its decision was based on the particular facts of the case, stating "we can envision other circumstances that could arise which would lead to the opposite result." *Id.* at 746 n.5.[6]

[21] *Bowles* is distinguishable from the present case. In *Bowles*, the Court did not discuss any of the circumstances under which the officer failed to file the probable cause affidavit before meeting with the magistrate. By contrast, in Ryder's case the record demonstrates that Trooper Augst prepared the probable cause affidavit and the search warrant at the APC, where one or more Clerk's employees are stationed to receive and file documents. Further, it appears there

---

[6] The parties also discuss *State v. Mason*, 829 N.E.2d 1010, 1020 (Ind. Ct. App. 2005), in which the Court noted a police officer did not file the probable cause affidavit until twenty-eight days after the trial court issued the search warrant. The Court deemed the delay "inexcusable" and "unnecessary," *id.* at 1021, but ultimately decided the case on different grounds: whether there was insufficient probable cause to support the search warrant.

is also a box at the APC in which officers may deposit documents for filing if a Clerk's employee is absent. Finally, Trooper Augst could have left copies of the documents with Judge Crawford but did not.

[22] We do not know why the trooper failed to accomplish the straightforward task of filing the affidavit before leaving the APC to meet with Judge Crawford. Under the facts of this case, we cannot conclude the trooper substantially complied with the statute by waiting three hours after the warrant had been signed and executed to file the probable cause affidavit.

## III. Good Faith Exception

[23] The State claims that even if the warrant was untimely filed, the statutory violation should be excused under the good faith exception to the exclusionary rule. In general, the exclusionary rule provides that evidence seized during a search conducted pursuant to an invalid search warrant may not be admitted at trial. *Smith v. State*, 982 N.E.2d 393, 406 (Ind. Ct. App. 2013), *trans. denied*. The General Assembly has codified an exception to the exclusionary rule, as follows:

> (a) In a prosecution for a crime or a proceeding to enforce an ordinance or a statute defining an infraction, the court may not grant a motion to exclude evidence on the grounds that the search or seizure by which the evidence was obtained was unlawful if the evidence was obtained by a law enforcement officer in good faith.

> (b) For purposes of this section, evidence is obtained by a law enforcement officer in good faith if:

> (1) it is obtained pursuant to:
>
> (A) a search warrant that was properly issued upon a determination of probable cause by a neutral and detached magistrate, that is free from obvious defects other than nondeliberate errors made in its preparation, and that was reasonably believed by the law enforcement officer to be valid; or
>
> (B) a state statute, judicial precedent, or court rule that is later declared unconstitutional or otherwise invalidated; and
>
> (2) the law enforcement officer, at the time he obtains the evidence, has satisfied applicable minimum basic training requirements established by rules adopted by the law enforcement training board under IC 5-2-1-9.

Ind. Code § 35-37-4-5 (1983).

[24] Officers are required to have a reasonable knowledge of what the law prohibits, but imposing on officers the obligation to second-guess a magistrate's decision in all but the most obvious instances of an affidavit lacking an indicia of probable cause is not a burden the law anticipates. *Jackson v. State*, 908 N.E.2d 1140, 1144 (Ind. 2009) (quotation omitted). Instead, suppression is appropriate where, upon facts known to the issuing magistrate or judge, a well-trained officer would have known that the search was illegal despite the magistrate's authorization. *Rice v. State*, 916 N.E.2d 296, 304 (Ind. Ct. App. 2009) (quotation omitted), *trans. denied*.

[25] In *State v. Brown*, 840 N.E.2d 411 (Ind. Ct. App. 2006), an officer requested a search warrant and presented evidence to the magistrate through oral testimony

rather than a written probable cause affidavit. The magistrate issued a search warrant, and incriminating evidence was discovered. The officer was not under oath when she testified, and as a result the warrant failed to comply with the requirements of Indiana Code section 35-33-5-8.

[26] On appeal, the State contended that the evidence in question was admissible under the statutory good faith exception because the officer reasonably believed the warrant was validly issued. A panel of this Court disagreed, concluding the warrant did not meet the statutory requirement of being "properly issued" because it was not supported by evidence presented under oath or affirmation. *Id.* at 416. The Court further stated that, given the unambiguous statutory requirement that testimony be submitted under oath, "no Indiana judge, attorney, or law enforcement officer . . . could have a reasonable belief that a warrant issued without sworn testimony was valid." *Id.* at 417.

[27] In Ryder's case, Indiana Code section 35-33-5-2 unambiguously requires the probable cause affidavit to be filed before a magistrate may issue a search warrant. The trooper's failure to file the affidavit before meeting with Judge Crawford was not a mere error but a fatal defect in the issuance of the warrant. We conclude, as the Court did in *Brown* with respect to the failure to provide testimony under oath, that the failure to timely file the probable cause affidavit may not have been deliberate, but "it was substantial." *Id*. at 416.

[28] We do not hold that the good faith exception is inapplicable every time an officer fails to timely file the probable cause affidavit. There will be

circumstances under which an officer may fail to timely file the affidavit yet still have complied with the requirements of the good faith statute. For example, in *Johnson*, 952 N.E.2d at 312, an officer submitted a probable cause affidavit and search warrant to court staff and then received them back from the magistrate. The documents were signed by the magistrate but had not been filed. A panel of this Court concluded: (1) the warrant was invalid because the probable cause affidavit had not been timely filed; but (2) the good faith exception applied because, among other reasons, the officer had delivered the documents to court employees and reasonably believed those employees would take the necessary steps to file the documents.

[29] By contrast, viewing the facts in Ryder's case in the light most favorable to the judgment, the trooper had no reason to rely on anyone else to complete the filing process, and there was no reason why he could not have filed the documents while he was at the APC. No well-trained officer could have concluded that the unfiled affidavit complied with statutory requirements. As a result, the trial court did not err in determining the good faith exception to the exclusionary rule was inapplicable.

# Conclusion

[30] For the reasons stated above, we affirm the judgment of the trial court.

[31] Affirmed.

Pyle, J., concurs
Brown, J., dissents with opinion.

| | |
|---|---|
| State of Indiana, | [Add Hand-down date] |
| *Appellant-Plaintiff*, | Court of Appeals Case No. 18A-CR-2325 |
| v. | Appeal from the Marion Superior Court |
| Wesley Ryder, | The Honorable Ronnie Huerta, Magistrate |
| *Appellee-Defendant*. | Trial Court Cause No. 49G09-1506-F6-19537 |

**Brown, Judge, dissenting.**

[32] I respectfully dissent from the majority's conclusions that any failure by Trooper Augst to comply with the statute was substantial and that the good faith exception does not apply. The majority cites *Johnson v. State*, 952 N.E.2d 305 (Ind. Ct. App. 2011), *trans. denied*. In that case, we held:

> [T]he warrant itself states that '[t]he [c]ourt, upon *examination* of the [affidavit], finds that there is a [p]robable [c]ause . . . .' (Defendant's Exh. A) (emphasis added). In comparison to the language of the warrants in *Wilson* [*v. State*, 263 Ind. 469, 333 N.E.2d 755 (1975)] and *Jefferson* [*v. State*, 891 N.E.2d 77 (Ind. Ct. App. 2008), *trans. denied*], this language does not indicate that Detective Rosado filed the affidavit. Instead, the word

"examination" implies that he exhibited the affidavit. Finally, Detective Rosado did not attempt to belatedly file the affidavit; he did not file it at all. Based on these facts, we cannot find any evidence that Detective Rosado filed the affidavit, so we conclude that it was not properly filed.

952 N.E.2d at 310. The *Johnson* court ultimately concluded that the trial court did not abuse its discretion in determining that the evidence on Johnson's computer was admissible under the good faith exception to the exclusionary rule or in denying Johnson's motion to suppress. *Johnson*, 952 N.E.2d at 312.

[33] The record here reveals that State's Exhibit 1 includes the search warrant which was signed by Judge Crawford and listed a date of June 4, 2015, and a time of 7:44 a.m. Further, State's Exhibit 1 also includes a document in which Judge Crawford's signature appears immediately under the following statement: "A copy of the Probable Cause Affidavit and Search Warrant has been filed with the Signing Judge on this date of June 4th 2015." State's Exhibit 1 (capitalization omitted). Thus, unlike in *Johnson*, Judge Crawford's signature clearly indicates that the probable cause affidavit and search warrant had been filed. While the majority states that Trooper Augst "had no reason to rely on anyone else to complete the filing process" and that "[n]o well-trained officer could have concluded that the unfiled affidavit complied with statutory requirements," slip op. at 14, I respectfully disagree in light of Judge Crawford's signature immediately under the statement that a copy of the probable cause affidavit and search warrant had been "filed" with her. State's Exhibit 1. Moreover, unlike in *Johnson* where the detective did not attempt to file the

affidavit belatedly or at all, in addition to Judge Crawford's signature, Trooper Augst deposited the warrant and probable cause affidavit in a box for the Clerk after the blood draw, and an entry made on the Clerk's docket at 11:17 a.m. indicated that the probable cause affidavit and search warrant had been filed.

[34] Under these circumstances, I would conclude that any failure by Trooper Augst to comply with the statute was not substantial and that the good faith exception applies. *See Bowles v. State*, 820 N.E.2d 739, 742, 746 (Ind. Ct. App. 2005) (observing that the detective did not leave a copy of the probable cause affidavit with the issuing magistrate and did not file it with the county clerk before the search warrant was issued, noting that the detective filed the affidavit the next day, and holding that, "[a]lthough we do not condone [the detective's] failure to file the affidavit as required by section 35-33-5-2(a), under the circumstances of this case, we conclude that [the detective] substantially complied with the statute when he filed the affidavit the next day"), *trans. denied*.

[35] For the foregoing reasons, I respectfully dissent and would reverse the trial court.