# IN THE SUPREME COURT OF IOWA

No. 15–1830

Filed April 21, 2017

**STATE OF IOWA,**

    Appellant,

vs.

**MAURICE D. ANGEL** and **KEMIA B. McDOWELL,**

    Appellees.

---

Appeal from the Iowa District Court for Scott County, Marlita A. Greve, Judge.

The State appeals the district court's grant of defendants' motions to suppress. **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

Thomas J. Miller, Attorney General, Linda J. Hines, Assistant Attorney General, Michael Walton, County Attorney, and Kelly G. Cunningham, Assistant County Attorney, for appellant.

Sharon D. Hallstoos of Hallstoos Law Office, Dubuque, for appellee Maurice D. Angel.

Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellee Kemia B. McDowell.

**MANSFIELD, Justice.**

A detective prepared a search warrant application, brought the application before a judicial officer, and without signing the application orally swore that it was true and correct in the presence of the judicial officer. The judicial officer approved and signed the warrant. Four days later, the warrant was executed.

The question now presented is whether a warrant issued under these circumstances violates Iowa Code section 808.3. We conclude that it does not, because section 808.3 permits the warrant applicant to swear to the truth of the warrant application in the presence of the judicial officer even if, inadvertently, the applicant fails to sign it.

For these reasons, we reverse the granting of the defendants' motions to suppress and remand for further proceedings.

## I. Background Facts and Proceedings.

In March 2015, Deputy Dan Furlong and fellow agents used a confidential source to make two crack cocaine purchases from Maurice Angel. This confidential informant had been known to Furlong and his fellow agents for three years, had provided reliable information in the past, and had not previously given false information. During those buys, which were visually recorded, Furlong and the other agents saw Angel driving a silver 2002 Chevrolet Tahoe. After the second buy, Angel returned to a residence at 1916 E. 38th St. in Davenport. A utilities check indicated that service was being provided to the residence under the name Kemia McDowell.

The following month, Deputy Furlong obtained a warrant for a GPS tracker that was attached to the Tahoe. On April 22, the tracker was placed on the Tahoe, and for the next two weeks, it confirmed that the vehicle was parked in front of 1916 E. 38th St. every night except one.

On the evening of May 7, Angel was observed by law enforcement parking the Tahoe and then walking directly into 1916 E. 38th St. Approximately fifteen minutes later, Angel was seen leaving the residence and driving to a McDonalds. Angel's Tahoe pulled into the McDonalds parking lot next to another vehicle. An individual got out of the other vehicle, and the other individual opened the front door of Angel's Tahoe and received an item. The entire encounter took less than two minutes. This other individual was a person on probation for possession of a controlled substance with intent to deliver and failure to affix a drug stamp.

For the next four hours, Angel's Tahoe continued to make a series of brief stops in various parking lots. Furlong suspected some of the stops were for the purpose of drug sales while others may have been efforts by Angel to determine if he was being followed. At about 1:15 a.m. on May 8, Angel's Tahoe returned to 1916 E. 38th St.

Later on May 8, Furlong prepared a warrant application to search the residence at 1916 E. 38th St. At the subsequent suppression hearing, Furlong described the process by which he obtained the actual search warrant:

> Q. Detective Furlong, I'm going to hand you what's been marked Defendant's Exhibit A. I'd like for you to take an opportunity to look at that and tell me if you recognize Defendant's Exhibit A. A. Yes, I do.
>
> Q. How do you recognize Defendant's Exhibit A? A. This is the search warrant that I typed for the residence of 1916 East 38th Street in Davenport.
>
> . . . .
>
> Q. Detective Furlong, when you prepared this set of documents, what did you do initially before presenting it to a judge? A. Once I finish preparing it, I brought it to you in the County Attorney's Office to review.
>
> Q. And was the document reviewed? A. Yes, it was.

Q. Does the State's signature appear on that document reflecting that review? A. Yes, it does, on page 4.

Q. Okay. And is that for the application for search warrant? A. Yes, it is.

Q. Once the State had reviewed that document, what was the next step you took? A. The next step that I took was to find a judge to review the search warrant.

Q. Okay. Where did you go to do that? A. I walked to the third floor of the Scott County courthouse.

Q. Were you able to locate a judge? A. Yes, I did.

Q. Who? A. Judge Henry Latham.

Q. Where did you locate Judge Latham at? A. I walked up the west stairwell after leaving the County Attorney's Office and I don't remember what door that is called. It's directly to the west behind us. And when I walked into the back hallway of the courtroom for district court, I ran into Judge Latham and I asked him if he had time to look at the search warrant.

Q. Was Judge Latham willing to look at this application for search warrant and the attached documents? A. Yes.

Q. Now, where did Judge Latham review these documents at? A. It was directly outside of the other judges' chambers in the hallway.

Q. Okay. Outside of Courtroom 4 here? A. Outside the courtroom.

Q. When you presented the documents to Judge Latham, what happened initially? A. The search warrant -- the same as every other search warrant. He asked me to raise my right hand and asked me to swear and affirm that everything in here was true and correct to the best of my knowledge.

Q. And then did you take that oath? A. Yes, I did.

Q. And did you swear and affirm before Judge Latham that the information contained within the application for search warrant was true and correct? A. Yes, I did.

Q. Now, having taken the oath, what did you observe Judge Latham do next? A. Judge Latham reviewed the search warrant and he signed the search warrant in all three places.

THE COURT: You're going to have to speak up. You're dropping off at the end. Judge Latham reviewed it and what? A. Judge Latham reviewed the search warrant and he signed the search warrant in three separate places on the application on the endorsement and on the search warrant.

Q. Now, in looking at the signature page for the application to search warrant, is there a signature on there? A. Is my signature on there?

Q. Right. A. No, it's not.

Q. Okay. And then can you explain how that came about? A. I -- after he swore me in, I handed him the documents or I handed him the documents first thing, he swore me in, and he reviewed everything and signed it in three places and returned it to me.

Q. Was it an oversight then that your signature did not get on the document? A. Yes, it was.

Q. Now, does the application for search warrant on the signature page indicate a date that it was presented to Judge Latham? A. May 8, 2015.

Q. And in going to the search warrant page, does it set forth a location where Judge Latham can date and sign when he would have approved the search warrant? A. Yes, it does.

Q. And what does it set forth? A. It was on May 8, 2015 at 3:22 p.m.

Q. Now, to be clear, were you given the oath or affirmation? A. Yes, I was.

Furlong executed the warrant the morning of May 12. At that time, McDowell was present in the residence and smoking marijuana in the presence of two young children. During the search, an unlabeled pill bottle containing 11.6 grams of crack cocaine, 3.5 grams of powder cocaine, 9 grams of marijuana, a digital scale, a marijuana grinder, and $703.00 in cash were collected.

Angel and McDowell were charged with possession with intent to deliver crack cocaine, possession with intent to deliver powder cocaine, possession with intent to deliver marijuana, conspiracy to commit possession with intent to deliver a controlled substance, sponsoring a gathering where controlled substances are unlawfully used, and a drug tax stamp violation. *See* Iowa Code § 124.401(1)(*b*)(3), (1)(*c*)(2), (1)(*d*) (2015); *id.* § 124.407; *id.* § 706.1(1); *id.* § 453B.12(2). McDowell was also charged with child endangerment. *Id.* § 726.6(1)(*a*).

Angel and McDowell moved to suppress the results of the search based on Deputy Furlong's failure to sign the warrant application and on lack of probable cause. A hearing on the motions to suppress took place on October 7. Following the hearing, the district court issued a ruling granting the motions to suppress. The court concluded that Iowa law required the warrant application to be signed in the presence of the issuing judicial officer. The court reasoned, "Detective Furlong's failure to sign the search warrant application means it was not 'supported by the person's oath or affirmation' as required by Iowa Code section 808.3." Citing *State v. Easter*, 241 N.W.2d 885 (Iowa 1976), the district court also concluded that it could not receive testimony given at a hearing on a motion to suppress a search warrant. It thus declined to consider Deputy Furlong's testimony.

Lastly, the district court took note of a further matter that had been discussed at the suppression hearing. Although the judge had signed (1) the warrant, (2) the jurat beneath the space for Deputy Furlong's signature on the application, and (3) the endorsement of the warrant application on May 8, he had failed to do any striking out or circling on the endorsement form where it said, "The information (is/is not) found to justify probable cause," and "I therefore (do/do not) issue probable cause." In the district court's view, this fact also supported granting the defendants' motions to suppress.[1]

We granted the State's application for discretionary review and retained the appeal.

---

[1]The district court's suppression ruling did not reach the defendants' argument that the warrant application did not provide probable cause to justify the search of the residence.

## II. Standard of Review.

We review challenges to warrant applications based on statutory requirements for corrections of errors at law. *State v. Davis*, 679 N.W.2d 651, 656 (Iowa 2004); *State v. Day*, 528 N.W.2d 100, 102 (Iowa 1995).

## III. Analysis.

The question we have to answer is one of statutory interpretation: Did the warrant comply with Iowa Code section 808.3? That section provides,

> A person may make application for the issuance of a search warrant by submitting before a magistrate a written application, supported by the person's oath or affirmation, which includes facts, information, and circumstances tending to establish sufficient grounds for granting the application, and probable cause for believing that the grounds exist. The application shall describe the person, place, or thing to be searched and the property to be seized with sufficient specificity to enable an independent reasonable person with reasonable effort to ascertain and identify the person, place, or thing. If the magistrate issues the search warrant, the magistrate shall endorse on the application the name and address of all persons upon whose sworn testimony the magistrate relied to issue the warrant together with the abstract of each witness' testimony, or the witness' affidavit. However, if the grounds for issuance are supplied by an informant, the magistrate shall identify only the peace officer to whom the information was given. The application or sworn testimony supplied in support of the application must establish the credibility of the informant or the credibility of the information given by the informant. The magistrate may in the magistrate's discretion require that a witness upon whom the applicant relies for information appear personally and be examined concerning the information.

Iowa Code § 808.3.

We believe the warrant complied with the statute. The application was "supported by the person's [i.e., Deputy Furlong's] oath or affirmation." *Id.* The statute does not state that the oath or affirmation itself must be in writing. To the contrary, the statute requires a "written

application," while separately requiring that the written application be "supported by the person's oath or affirmation." *Id.* Both prerequisites were met here. The adjective "written" modifies "application," not "oath or affirmation."

Iowa Code section 808.3 contemplates that the magistrate may rely on "sworn testimony." *Id.* It is of course true that the magistrate must make an abstract of any oral testimony that he or she receives. In *State v. Liesche*, we recognized,

> [I]t was the intent of the legislature . . . to require the sufficiency of probable cause for issuance of a search warrant to be tested entirely by the recitals in affidavits and the magistrate's abstracts of oral testimony endorsed on the application. No other evidence bearing on this issue should be received in a suppression hearing. All essential facts bearing on the existence of probable cause must either be included in an affidavit or affidavits presented to the issuing officer or in the issuing officer's abstract or abstracts of sworn oral testimony. The search warrant must stand or fall on the facts shown in that manner.

228 N.W.2d 44, 48 (Iowa 1975).

But *Liesche* stands only for what it says, namely, that the "essential facts bearing on the existence of probable cause" must appear either in the warrant application or in the abstract of testimony. *Id.* Nothing in *Liesche* says that the fact that an oath or affirmation was given cannot be proved up later.

Our decision in *State v. Harris*, 436 N.W.2d 364 (Iowa 1989), offers guidance for the present case. In *Harris*, a police officer sought a search warrant based entirely on the hearsay statements of a confidential informant. *Id.* at 369. Because the magistrate was "less than satisfied with these hearsay averments, he asked that the informant be brought before him for questioning under oath." *Id.* After questioning the informant under oath, the magistrate issued the warrant, merely noting

the informant's name on the warrant application as one of the "persons upon whose sworn testimony the magistrate has relied to issue a warrant." *Id.*

On appeal, the defendant argued that the search results should have been suppressed because there was no record or abstract of the informant's testimony, which had been necessary to establish probable cause. *Id.* We held otherwise, explaining as follows:

> The defendant contends that in reviewing the probable cause finding we may not consider any of the circumstances involving the informant's personal appearance before the magistrate. Consideration of such evidence is precluded, he asserts, by our decision in *State v. Liesche*, 228 N.W.2d 44, 48 (Iowa 1975), requiring that all evidence relied on in issuing a search warrant must be shown on the search warrant application or abstracted by the magistrate. We do not find that *Liesche* defeats the analysis contained in the preceding paragraph.
>
> The *Liesche* doctrine only precludes the supplying of new facts at a suppression hearing which were not abstracted by the magistrate or contained in the affidavits supporting the warrant application. In the present case, all of the facts relied upon by the magistrate were in the affidavit supplied with the warrant application. The act of listing the informant as an additional witness indicated quite clearly, we believe, that the informant had sworn to the truth of the statements attributed to him in [the officer's] affidavit. The additional testimony taken from the magistrate at the suppression hearing only served to corroborate that which was already to be inferred from the record. Given these circumstances, we conclude that this procedure did not violate the *Liesche* restrictions.

*Id.* at 370–71.[2]

Hence, we decided in *Harris* that so long as the facts themselves were found in the written warrant application, it was proper to "infer[]

---

[2]*Easter*, a pre-*Liesche* decision cited by the district court, likewise stands only for the proposition that the basis for probable cause must be set forth on "facts recited in the affidavits and the abstracts of oral testimony endorsed on the application." *See* 241 N.W.2d at 886.

from the record" that the informant had sworn to those facts. *Id.* If we applied *Harris* here, we could infer from the record—even without the suppression hearing testimony—that Deputy Furlong swore to the facts contained in the warrant application. The judge's signature on the jurat immediately following the space for Deputy Furlong's signature allows that inference. Regardless, Deputy Furlong's testimony eliminates any doubt.

The court below expressed concern that if it considered Furlong's testimony, it would also have to receive testimony (if requested) from the judge who issued the warrant. Yet *Harris* demonstrates there is nothing necessarily amiss about such testimony. The magistrate testified in *Harris*, and we voiced no concern, while noting that the testimony "only served to corroborate that which was already to be inferred from the record." *Id.* We allow magistrates to testify at suppression hearings in other contexts, for example, when a claim is made that the officer omitted material information from the warrant application. *See State v. McPhillips*, 580 N.W.2d 748, 751 (Iowa 1998); *see also State v. Aldape*, 307 N.W.2d 32, 36–37 (Iowa 1981) (relying on magistrate testimony in overruling a motion to suppress and concluding that the defendant's subsequent statements were voluntary).

Of course, the better practice would be to avoid the need for taking testimony from either the applicant or the issuing magistrate. This can be done by ensuring that the applicant signs the application in the magistrate's presence. Here that did not occur due to an oversight. However, the issuance of the warrant still complied with Iowa Code section 808.3.

Although the question here involves interpretation of an Iowa statute, our decision today appears to be consistent with the prevailing

view in other jurisdictions. One guidepost is the LaFave treatise on search and seizure law. *See* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.3(e), at 658 (5th ed. 2012). Our court frequently cites this treatise.[3]

LaFave states,

> [A] written affidavit is not per se defective because it contains no signature or because it is shown that the signature was affixed subsequent to the search; *in such instances it is still open to the prosecution to show by testimony that the affiant had taken an oath.*

*Id.* at 661 (emphasis added). LaFave then goes on to cite decisions from Florida, Louisiana, Maryland, Massachusetts, Michigan, and Texas in support of this statement. *Id.* at 661–62 n.64.[4] Still other states, not cited in the LaFave treatise, have similarly held.[5]

---

[3]*See, e.g., State v. Lindsey*, 881 N.W.2d 411, 424 n.4 (Iowa 2016); *State v. Gaskins*, 866 N.W.2d 1, 36–37 (Iowa 2015) (Appel, J., concurring specially); *State v. Kern*, 831 N.W.2d 149, 168–70 (Iowa 2013); *State v. Baldon*, 829 N.W.2d 785, 797–99 (Iowa 2013); *State v. Breuer*, 808 N.W.2d 195, 199 (Iowa 2012).

[4]*See Moreno-Gonzalez v. State*, 67 So. 3d 1020, 1027 (Fla. 2011); *State v. Roubion*, 378 So. 2d 411, 413–14 (La. 1979); *Valdez v. State*, 476 A.2d 1162, 1166–67 (Md. 1984); *Commonwealth v. Young*, 383 N.E.2d 515, 517 (Mass. App. Ct. 1978); *People v. Mitchell*, 408 N.W.2d 798, 801 (Mich. 1987); *Smith v. State*, 207 S.W.3d 787, 793–94 (Tex. Crim. App. 2006).

[5]*See Milne v. State*, 607 P.2d 360, 362 (Alaska 1980) (upholding the validity of a warrant based on testimony from the magistrate and the officer at the suppression hearing "that the witnesses were sworn before they testified"); *State v. Colon*, 644 A.2d 877, 882 (Conn. 1994) ("[A]lthough probable cause must be determined from the four corners of the warrant, we are not confined to the four corners of the warrant in determining whether the affidavit in support of probable cause has been validly executed."); *People v. Vera*, 913 N.E.2d 86, 90 (Ill. App. Ct. 2009) ("Although the best practice would be to sign the complaint, the facts here show that the defect was only technical and therefore insufficient to invalidate the warrant."); *State v. Nunn*, 783 P.2d 26, 26–27 (Or. Ct. App. 1989) (holding that a court may consider extrinsic evidence in determining whether the oath or affirmation requirement of the Oregon Constitution had been met); *State v. Keith*, 978 S.W.2d 861, 869–70 (Tenn. 1998) ("[A] majority of other state courts considering whether a search warrant is void based upon an affidavit which contains an incomplete or defective jurat . . . allow extrinsic evidence to prove that the affidavit was properly sworn.").

LaFave does acknowledge that "[i]n some jurisdictions, the applicable statutes or court rules may be more strict." *Id.* at 662 n.64. His list of stricter jurisdictions does not include Iowa. *See id.*[6]

"There is a preference for warrants and we construe them in a commonsense manner, resolving doubtful cases in favor of their validity." *State v. Sykes*, 412 N.W.2d 578, 581 (Iowa 1987). Thus, we do not adopt the view that the warrant was invalid because the issuing judge, despite signing the warrant, the application endorsement, and the jurat to the application, did not strike out the words "is not" from two sentences in the endorsement. Based on the documentation before us, no doubt exists that the judge found probable cause to issue the warrant and approved the warrant. *See id.* at 581–82 (finding that the magistrate's signature at the bottom of an instrument where the applicant attested to the reason for an informant's reliability was sufficient to allow the conclusion that the magistrate had found the informant reliable for the same reason). Signing the warrant was the essential act under Iowa Code section 808.4, and that occurred.[7]

---

[6]LaFave cites to a case from Georgia and a case from Pennsylvania for this proposition. *See State v. Barnett*, 220 S.E.2d 730, 731–32 (Ga. Ct. App. 1975) (holding that the application had to be signed because Georgia law requires a "written complaint," which it equated to an "affidavit"); *Commonwealth v. Williams*, 352 A.2d 67, 68 n.2 (Penn. Super. Ct. 1975) (noting that an officer's testimony at a suppression hearing "that he was in fact properly sworn . . . is of no consequence in light of Pa. R. Crim. P., Rule 2003(b)"). *But see State v. Herring*, 692 S.E.2d 490, 496 (S.C. 2009) ("[T]he language does not state an affidavit must be sworn in person. It only requires the affidavit be sworn.").

[7]Iowa Code section 808.4 provides,

> Upon a finding of probable cause for grounds to issue a search warrant, the magistrate shall issue a warrant, signed by the magistrate with the magistrate's name of office, directed to any peace officer, commanding that peace officer forthwith to search the named person, place, or thing within the state for the property specified, and to bring any property seized before the magistrate.

**IV. Conclusion.**

For these reasons, we reverse the district court's granting of the motions to suppress and remand for further proceedings consistent with this opinion. We do not address the question whether probable cause existed for issuance of the search warrant and leave that for the district court's determination on remand.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

All justices concur except Appel, Wiggins, and Hecht, JJ., who dissent.

---

*State v. Beckett*, 532 N.W.2d 751 (Iowa 1995), is not a "check the box" case and is not on point. At that time, state law required the magistrate to specify reasons for finding a confidential informant credible. *See id.* at 754. The magistrate provided no reasons, instead putting a line through this part of the form. *Id.* at 753. We held this did not substantially comply with the statute. *Id.* at 754.

By contrast, the present case does not involve a judicial officer's failure to give reasons as required by law. Instead, there was at most a scrivener error in failing to strike out a few words. The judge's signatures on the warrant, the application endorsement, and the jurat all signify that the judge found probable cause for issuance of the warrant. *Sykes*, which *Beckett* discussed and distinguished, *see id.*, is a far more relevant precedent.

**APPEL, Justice (dissenting).**

I respectfully dissent.

I would find that the search warrant in this case was not validly executed because the search warrant was not supported by an oath in writing as obviously required by Iowa Code section 808.3 (2015). The majority's effort to feather the requirement that the oath be in writing is unconvincing and reflects a troublesome lack of seriousness about procedural regulatory in search and seizure law.

Further, I would also find that the search warrant is invalid because of the failure of the district court to make a finding of probable cause. We rely upon the district court to exercise appropriate judicial oversight of the search and seizure process. We should not be left guessing as to whether such oversight has, in fact, been appropriately exercised.

The issuing of a search warrant—which, among other things, may authorize a home invasion by authorities—is among the most delicate and sensitive legal process known under our constitutional system. The process of issuing a valid search warrant is not a bureaucratic bother in which a lackadaisical, close-enough attitude toward legal requirements is good enough. Because of the gravity of the individual rights at stake and the central role of the search warrant process in protecting citizens from unwarranted intrusions by government, our review of the warrant process must be highly detailed and demanding.

In this case, the district court reviewing the search warrant process performed its function admirably when it held that the search was invalid on both grounds. This court, however, falls well short of the mark by endorsing a sloppy, poorly executed search warrant process.

Once again, we will be required to vigorously engage in damage control to limit the harm in future cases and to prevent search and seizure law from being substantially compromised by relaxed standards designed to excuse or avoid legal requirements that protect our citizens.

## I. Introduction.

The application for the search warrant in this case begins, "Being duly sworn, I, the undersigned, say that at the place (and on the person(s) and in the vehicle(s)) described as follows." The application describes the house, Maurice Angel's car, and the items to be seized. Below the concluding paragraph, there is a signature space provided labeled "Detective Dan Furlong, Affiant." Detective Furlong did not sign, and the space is blank. Below this, the application reads "Subscribed and sworn to before me on May 8th 2015." The district court judge signed in the space provided for the magistrate or judge's signature. Below this, the application reads "WHEREFORE, the undersigned asks that a Search Warrant be Issued" and the assistant Scott County attorney signed in the space provided.

An "Endorsement on Search Warrant Application" was attached to the warrant application. This document begins, "In issuing the search warrant, the undersigned relied upon the sworn testimony of the following person(s) in addition to the statements and information contained in the Application and any Attachments thereto." Detective Furlong's name and the address of the Scott County sheriff's office were typed below.

The "Endorsement on Search Warrant Application" also has a place for the judge to circle whether or not the judge finds probable cause. This reads, "The information (is/is not) found to justify probable cause. . . . I therefore (do/do not) issue probable cause." Nothing was

circled or otherwise marked. It was left entirely blank. Below this is a space for a judicial signature, which the district court judge signed. The district court judge also signed the search warrant itself.

The search warrant was executed on May 12. Kemia McDowell was present in the house with her children. Angel and McDowell were arrested that same day. They were each charged with six counts of felony drug charges, and McDowell was additionally charged with child endangerment, an aggravated misdemeanor. Angel and McDowell both pled not guilty.

Angel then moved to suppress the results of the May 12 search and an interrogation that followed. Angel argued that the application for the search warrant was not supported by oath or affirmation because Detective Furlong did not sign the application as the "Affiant." Angel additionally argued that a subsequent interrogation was thus the fruit of the poisonous tree and so should also be suppressed. McDowell joined Angel's motion to suppress and separately moved to suppress the results of the search as well, arguing that on the merits of the warrant application probable cause was lacking.

The State resisted the motions and the district court held a hearing on October 7. Over the defendants' objections, the district court heard testimony from Detective Furlong, but did so on a provisional basis without determining that it would consider the testimony in ruling on the motion. Detective Furlong testified that the issuing judge gave the detective the oath and that the detective's failure to sign on the form was simply an oversight.

The district court granted Angel's motion to suppress and dismissed McDowell's motion to suppress as moot. Following our caselaw, the district court stated it would not consider Detective

Furlong's testimony because a court is limited to considering what is within the four corners of the warrant application. The district court found that the detective's failure to sign meant the application was not supported by the requesting party's oath or affirmation as required by Iowa Code section 808.3. The district court also found the lack of an indication on the search warrant that the issuing judge found probable cause meant that the search warrant should not have been issued. The district court declined to consider whether there was probable cause to support the warrant because the application's fatal flaws were dispositive.

**II. Failure to Provide a Written Oath as Required by Iowa Code Section 803.8.**

**A. Introduction.** In the next few pages, I outline why the majority opinion is wrong on the question of whether the oath must be in writing. I generally canvass the framework of Iowa search and seizure law, which emphasizes the high importance of search and seizure limitations in protecting citizens from overreaching government.

I next canvass the twin pillars of our search and seizure law—namely, the requirement that applications for search warrants be in writing, and our refusal to accept the so-called good-faith exception to the warrant requirements. These two principles are bedrock concepts of search and seizure law in Iowa. They prevent law enforcement from engaging in post hoc rationalizations of searches and prevent a "close enough" attitude from invading our search and seizure law and undermining substantive legal requirements.

I then canvass in some detail the caselaw supporting my view that the failure to provide a contemporaneous written oath is fatal to the warrant in this case as correctly found by the district court.

**B. The Framework of Iowa Search and Seizure Law.** Article I, section 8 of the Iowa Constitution provides,

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the persons or things to be seized.

The Fourth Amendment of the United States Constitution provides search and seizure constitutional protection in nearly identical language. *See State v. Ochoa*, 792 N.W.2d 260, 268 (Iowa 2010). Under both constitutions, the language requires that in order to be valid a warrant must, at minimum, meet four requirements: (1) it must be based on probable cause, (2) supported by a sworn affidavit, (3) describe with particularity the place to be searched, and (4) describe with particularity the persons or things to be seized. *See Groh v. Ramirez*, 540 U.S. 551, 557, 124 S. Ct. 1284, 1289 (2004); *Levine v. City of Bothell*, 904 F. Supp. 2d 1124, 1129 (W.D. Wash. 2012); *State v. Short*, 851 N.W.2d 474, 500 (Iowa 2014).

In addition to the constitutional requirements, the Iowa legislature enacted a statutory scheme to govern the process of applying for, issuing, and executing search warrants. *See* Iowa Code ch. 808. With respect to the application of a search warrant, the statute provides,

> A person may make application for the issuance of a search warrant by submitting before a magistrate a written application, supported by the person's oath or affirmation, which includes facts, information, and circumstances tending to establish sufficient grounds for granting the application, and probable cause for believing that the grounds exist.

Iowa Code § 808.3. Concerning the issuance of a search warrant, the statute states,

> Upon a finding of probable cause for grounds to issue a search warrant, the magistrate shall issue a warrant, signed by the magistrate with the magistrate's name of office, directed to any peace officer, commanding that peace officer forthwith to search the named person, place, or thing within the state for the property specified, and to bring any property seized before the magistrate.

Iowa Code § 808.4.

We have held that the "primary purpose of the legislature [was] to insure that the magistrate should have before him *a writing, showing under oath* that there was probable cause for the issuance of the process," because at common law or under the Constitution, a search warrant could be supported by an oral presentation to a magistrate. *Battani v. Grund*, 244 Iowa 623, 628, 56 N.W.2d 166, 170 (1952) (emphasis added); *see also State v. Cook*, 498 N.W.2d 17, 20 (Minn. 1993) ("The purpose of these procedures is to have a record made contemporaneously with the authorization of the search warrant that will show both probable cause for a search and a reasonable need for the warrant to be issued . . . so that later, if need be, there is a basis for challenging the warrant that is not dependent solely on after-the-fact recollections.").

In the context of showing probable cause, we have said, "Warrants are favored and search warrant affidavits must be scrutinized in a commonsense and realistic fashion so that the police officers who draft them are not discouraged from seeking judicial approval of their acts." *State v. Seiler*, 342 N.W.2d 264, 267 (Iowa 1983) (citations omitted); *see State v. Swaim*, 412 N.W.2d 568, 571 (Iowa 1987) (stating that, because there is a preference for warrants, findings of probable cause should be resolved in favor of the validity of the warrant in doubtful or marginal cases).

### C. Twin Pillars of Iowa Search and Seizure Law.

1. *Refusal to consider extrinsic evidence to support warrants.* Under Iowa law, we have repeatedly held that extrinsic evidence to support a showing of probable cause is not admissible to rehabilitate a warrant that is defective under Iowa Code chapter 808 or its predecessors.

In *State v. Liesche*, we considered a case in which a warrant was issued on the basis of a witness's sworn testimony, but the warrant application did not contain an endorsement showing the name and address of the witness who gave the testimony, nor an abstract of the contents of the testimony, as required by Iowa statute. 228 N.W.2d 44, 45 (1975). The application did contain an affidavit of a police officer who wrote under oath that the officer "has a substantial reason to *believe*" that evidence was concealed on the person or in the vehicle of the defendant. *Id.* (emphasis added). At the suppression hearing five months after the warrant was issued, the issuing judge testified that he did not clearly remember the circumstances under which the warrant was issued. *Id.* The judge did, however, recall that the police officer, in an unrecorded supplement to the officer's affidavit with no evidence that the officer was sworn, gave the judge additional evidence—namely that the officer was looking for a weapon used in an earlier offense and other additional details. *Id.*

We held that probable cause was not shown and thus the results of the search should have been suppressed. *Id.* at 49. We stated that we would assume without deciding that the officer was sworn when he gave the judge the additional evidence. *Id.* at 46. We explained, however, that the intent of the legislature in enacting the predecessor to Iowa Code section 808.3 was "to require the sufficiency of probable cause for

issuance of a search warrant to be tested entirely by the recitals in affidavits and the magistrate's abstracts of oral testimony endorsed on the application." *Id.* at 48. To hold otherwise, we explained, created "an intolerable situation in the suppression hearing" in which all parties were "dependent on the understandably poor memory of the justice of the peace concerning information he had received more than five months earlier." *Id.* at 47. The court could therefore not consider evidence of sworn oral testimony supporting probable cause of the warrant. *Id.* at 48.

Our subsequent cases support the holding in *Liesche*. *See, e.g.*, *State v. Thomas*, 540 N.W.2d 658, 661–62 (Iowa 1995) ("It is well established in Iowa jurisprudence that the issuance of a search warrant [under Iowa Code chapter 808] is to be 'tested entirely by the recitals in affidavits and the magistrate's abstracts of oral testimony endorsed on the application.' " (quoting *Liesche*, 228 N.W.2d at 48)); *State v. Seager*, 341 N.W.2d 420, 426 (Iowa 1983) ("[W]e may consider only the information contained in the foregoing affidavit in determining whether probable cause was shown for the warrant to issue [under the statute]."); *State v. McManus*, 243 N.W.2d 575, 577 (Iowa 1976) ("We must determine the validity [under the Code] of the search warrant only upon the facts recited in the affidavits and the abstracts of oral testimony endorsed on the application; it cannot be rehabilitated or fortified by later testimony."); *State v. Easter*, 241 N.W.2d 885, 886 (Iowa 1976) (rejecting the consideration of an officer's testimony at suppression

hearing because the evidence did not appear in the endorsement and affidavits as required by statute).[8]

2. *Rejection of constitutional and statutory good-faith exception to warrant requirements.* Iowa does not recognize the good-faith exception to the exclusionary rule in search and seizure cases under article I, section 8. *State v. Cline*, 617 N.W.2d 277, 292–93 (Iowa 2000), *abrogated on other grounds in State v. Turner*, 630 N.W.2d 601, 606 n.2 (Iowa 2001). According to *Cline*, we refused to adopt a good-faith exception to article I, section 8 of the Iowa Constitution because a violation of the right to be protected from unreasonable searches and seizures is not mitigated by a police officer's belief in the lawfulness of the act. *Id.* at 292. We held that "the only effective way to ensure that this right is more than mere words on paper is to exclude illegally obtained evidence." *Id.*

---

[8]Most states agree with Iowa that all evidence supporting a warrant must be recorded as part of the warrant application. *See, e.g., Hall v. State*, 789 S.W.2d 456, 458 (Ark. 1990) (reasoning that a record is required to allow for review of ex parte proceedings and "to minimize the necessity of calling magistrates to prove what can easily be documented"); *Orr v. State*, 382 So. 2d 860, 861 (Fla. Dist. Ct. App. 1980) (per curiam) ("An affidavit forming the basis of a search warrant must, in and of itself, demonstrate probable cause for the issuance of the warrant and cannot be supplemented by oral testimony to prove the probable cause."); *State v. Hendrickson*, 701 P.2d 1368, 1371 (Mont. 1985) (approving of trial court judge's refusal to look for probable cause beyond four corners of the affidavit); *Commonwealth v. Edmunds*, 586 A.2d 887, 891 (Pa. 1991) ("[C]ourts in Pennsylvania shall not consider oral testimony outside the four corners of the written affidavit . . . ."); *State v. Carter*, 160 S.W.3d 526, 533 (Tenn. 2005) ("The probable cause necessary for issuance of a search warrant must be based upon evidence appearing in a written and sworn affidavit."). *See generally* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.3(b), at 643–48 (5th ed. 2012). A minority of states, however, permit some extrinsic evidence to support a warrant. *See, e.g., Carter v. State*, 405 So. 2d 957, 959–60 (Ala. Crim. App. 1981) ("The failure of the magistrate . . . to reduce to writing oral evidence given by the affiant prior to the issuance of a search warrant will not vitiate an otherwise valid search warrant."); *Cook*, 498 N.W.2d at 21–22 (stating that Minnesota allows evidence of sworn but unrecorded oral testimony); *State v. McKnight*, 352 S.E.2d 471, 472 (S.C. 1987) ("A search warrant affidavit which itself is insufficient to establish probable cause may be *supplemented* before the magistrate by sworn oral testimony.").

We thus declined to follow the approach of the United States Supreme Court in *United States v. Leon*, 468 U.S. 897, 922, 104 S. Ct. 3405, 3420 (1984). *Cline*, 617 N.W.2d at 292–93. Our ruling in *Cline* is consistent with that in a growing number of states. *See, e.g.*, *State v. Marsala*, 579 A.2d 58, 68 (Conn. 1990); *Gary v. State*, 422 S.E.2d 426, 429 (Ga. 1992); *Minn. State Patrol Troopers Ass'n v. State*, 437 N.W.2d 670, 676 (Minn. Ct. App. 1989); *State v. Novembrino*, 519 A.2d 820, 857 (N.J. 1987); *People v. Bigelow*, 488 N.E.2d 451, 455 (N.Y. 1985); *Commonwealth v. Johnson*, 86 A.3d 182, 188 (Pa. 2014).

We also have not recognized a good-faith exception to Iowa Code sections 808.3 and 804.4. *Thomas*, 540 N.W.2d at 666; *State v. Iowa Dist. Ct.*, 472 N.W.2d 621, 624 (Iowa 1991). We explained our reasoning in *State v. Beckett*, 532 N.W.2d 751, 755 (Iowa 1995). In *Beckett*, we stated that "[a]dopting a good faith exception to the statutory requirement would effectively defeat the purpose of the statute because failure to comply with the statute would be of no consequence." *Id.* Thus, we held in *Beckett* that if a warrant is invalid under the statute, a motion to suppress must be granted. *Id.*

**D. Caselaw on Validity of Warrants Without Contemporaneous Record of Oath or Affirmation.** Although we have generally rejected extrinsic evidence to support a warrant and have rejected a good-faith exception to the exclusionary rule, we have not as yet specifically considered a case under Iowa law concerning the validity of a warrant when there is no evidence in the four corners of the warrant application that the police officer requesting the warrant was duly sworn. A number of other states, however, have considered the question with mixed results.

Courts from a number of jurisdictions have held that a warrant application that fails to show the affiant was sworn meant that the evidence from the search should have been suppressed. The Supreme Court of New Jersey considered a case involving the validity under court rules of an unrecorded telephonic request for a warrant in *State v. Valencia*, 459 A.2d 1149, 1151 (N.J. 1983). In *Valencia*, a police officer called a judge and read to the judge an unsworn affidavit and did not formally affirm the affidavit. *Id.* at 1151–52. The judge orally authorized the search. *Id.* at 1152. After the search, the officer visited the judge, took a formal oath, swore to the contents of the affidavit, and the judge signed the written search warrant. *Id.* New Jersey court rules did not provide for telephonic warrants, but the state argued that the telephonic request functionally complied with the court rule on warrants. *Id.* at 1153. The rule on affidavits required that the application present evidence through either a written affidavit or through sworn testimony recorded in a transcript. *Id.*

The New Jersey Supreme Court held that the search warrant was invalid. *Id.* at 1154. The New Jersey court explained that "strict adherence to the protective rules governing search warrants is an integral part of the constitutional armory safeguarding citizens from unreasonable searches and seizures." *Id.* at 1153. The overall objective of the rules on warrants, the court further stated, "is to enhance the soundness and integrity of the judicial decisional process," and the requirement of a written affidavit or recorded sworn testimony is essential in order to encourage the presentation of trustworthy evidence. *Id.* "The failure to meet these several requirements subverts the reliability of the decisional process; it undermines the proper discharge of the judiciary's responsibility and clouds the judge's role in authorizing

the search." *Id.* at 1154. The lack of evidence of an oath, among other problems, could "[u]nder no circumstances . . . be fairly regarded as 'technical insufficiencies or irregularities.' " *Id.*

An Indiana appellate court considered a case in which a transcript of a police officer's oral testimony to obtain a warrant definitively showed that the officer was not under oath. *See State v. Brown*, 840 N.E.2d 411, 413 (Ind. Ct. App. 2006). The state conceded the lack of an oath rendered the warrant defective under Indiana statute, but argued either the *Leon* or Indiana's statutory good-faith exception to the exclusionary rule should apply. *Id.* at 414–15.

The Indiana appellate court held that the good-faith exception did not apply in that case. *Id.* at 423. The good-faith exception did not apply, the Indiana appellate court reasoned, because an oath or affirmation is an "essential prerequisite to obtaining a valid search warrant." *Id.* at 421 (quoting *State v. Tye*, 636 N.W.2d 473, 477 (Wis. 2001)). A warrant that lacks an oath or affirmation is so deficient on its face, the court held, that "reliance upon the warrant is unreasonable." *Id.* (quoting *Tye*, 636 N.W.2d at 480 (Crooks, J., concurring)). An oath is such an essential part of a warrant because the requirement

> is designed to ensure that the truth will be told by insuring that the witness or affiant will be impressed with the solemnity and importance of his words. The theory is that those who have been impressed with the moral, religious or legal significance of formally undertaking to tell the truth are more likely to do so than those who have not made such an undertaking or been so impressed.

*Id.* at 422 (quoting *United States v. Brooks*, 285 F.3d 1102, 1105–06 (8th Cir. 2002)). As such, the requirement of an oath "is no technical or trivial component of the Warrant Clause of the Fourth Amendment." *Id.* (quoting *United States v. Chapman*, 954 F.2d 1352, 1370 (7th Cir. 1992)).

Disregarding the oath or affirmation requirement would "open wide the door to the issuance of unlawful warrants." *Id.* at 416.

Using similar reasoning, the Supreme Court of Wisconsin held that a warrant not supported by oath or affirmation as required by the United States and Wisconsin Constitutions cannot fall within Wisconsin's good-faith exception to the exclusionary rule. *See Tye*, 636 N.W.2d at 479–80 (majority opinion). In *Tye*, the police officer requesting the warrant failed to sign and swear to the truth of the affidavit. *Id.* at 475.

The Wisconsin court rejected the state's argument that the requirement of an oath or affirmation is a matter of form, not substance. *Id.* at 478. The Wisconsin Supreme Court explained, "An oath or affirmation protects the target of the search from impermissible state action by creating liability for perjury or false swearing for those who abuse the warrant process by giving false or fraudulent information." *Id.* (footnote omitted). The exclusionary rule did not apply, the Wisconsin Supreme Court concluded, because an affidavit not supported by an oath or affirmation shows plainly that a judge or magistrate has no business issuing a warrant. *Id.* at 479.

The Supreme Court of Alaska considered a motion to suppress when a warrant stated it was based on sworn testimony of a witness, but a transcript of such testimony failed to show that the witness was placed under oath. *Milne v. State*, 607 P.2d 360, 362 (Alaska 1980). The issuing magistrate testified the witness was sworn just prior to the recorded portion of the hearing. *Id.*

The Alaska Supreme Court held that, while a showing of the constitutional requirement of an oath was satisfied by the magistrate's testimony, a state statutory requirement that oaths must be on the record was not met. *Id.* The Alaska Supreme Court announced that it

would enforce this requirement prospectively, but would allow the evidence to be admitted in the instant case. *Id.* The Alaska Supreme Court explained, "Our purpose in doing so is to avoid the necessity of later being forced to speculate whether the oath was in fact given or as to its sufficiency." *Id.*

The Court of Appeals of Georgia held that evidence should have been suppressed when a warrant was issued on the basis of an affidavit signed by the issuing judge but not by the requesting police officer, in violation of Georgia statute. *Henry v. State*, 626 S.E.2d 511, 511–12 (Ga. Ct. App. 2006). The Georgia appellate court stated that it was axiomatic that a "signature of the affiant is necessary to the validity of an affidavit." *Id.* at 512–13 (quoting *State v. Barnett*, 220 S.E.2d 730, 732 (Ga. Ct. App. 1975)). The signature of the issuing judge on the affidavit did not cure the lack of the affiant's signature showing that the affiant was under oath. *Id.* at 513.

In *Commonwealth v. McAfee*, a Pennsylvania superior court held that an affidavit supporting a warrant was fatally defective under the Pennsylvania Constitution and a state statute on warrants because the affidavit supporting the warrant did not include evidence showing that the requesting officer was properly sworn. 326 A.2d 522, 522–23 (Pa. Super. Ct. 1974). The *McAfee* court said that under the Pennsylvania Constitution and under statute, an oath must be in writing—permitting later testimony that an oath occurred would "render the constitutionally provided safeguard meaningless." *Id.* at 523; *see also Commonwealth v. Williams*, 352 A.2d 67, 68 (Pa. Super. Ct. 1975).

There is contrary authority. A number of states have declined to hold search warrants defective for lack of oath or affirmation under the good-faith exception which Iowa has rejected. For example, in federal

jurisdictions which necessarily recognize the United States Supreme Court's good-faith exception in *Leon*, good-faith search warrants with defective oaths or affirmations have been upheld. *See, e.g.*, *United States v. Schubert*, 528 F. App'x 613, 618 (7th Cir. 2013); *United States v. Guzman*, 507 F.3d 681, 686 (8th Cir. 2007).

A number of state courts have also upheld searches pursuant to warrants with defective oaths or affirmations. Again, however, the mechanism employed in these state court cases is often a variant of the good-faith exception rejected in Iowa.

For instance, a California appellate court considered a case in which a "Statement of Probable Cause" did not contain the verification or signature of the police officer requesting the warrant. *People v. Leonard*, 57 Cal. Rptr. 2d 845, 847 (App. Ct. 1996). An attached affidavit did contain the officer's verification and signature, but the affidavit said that the officer "has probable cause to believe and does believe" in the search warrant application. *Id.* The defendant sought to suppress the results of the search, arguing that the unsworn and unsigned "Statement of Probable Cause" was the only document containing the factual information used to support issuing the search warrant, and the sworn affidavit merely contained the officer's belief that a warrant should be issued. *Id.*

The California court recognized the defect in the oath and emphasized that "[t]he failure of the affiant to swear to the truth of the information given to the magistrate . . . cannot be construed as a 'technical' defect. It is a defect of substance, not form." *Id.* at 848. Yet, the California court held that the evidence was admissible under California's version of the *Leon* good-faith exception. *Id.* at 849. According to the California court, "We emphasize however, that were it

not for the *Leon* exception, we would be compelled to declare the warrant invalid and the search illegal." *Id.*; *see also People v. Vera*, 913 N.E.2d 86, 90 (Ill. App. Ct. 2009) (relying on Illinois statutory exception similar to *Leon*).

While we have emphasized the undesirability of relying at a suppression hearing upon "the understandably poor memory" of a magistrate concerning information received many months earlier in *Liesche*, 228 N.W.2d at 47–48, other courts have been less committed to the notion that the validity of a search should be based upon the contemporaneous record established before the magistrate, *see, e.g.*, *State v. Nunn*, 783 P.2d 26, 26–27 (Or. Ct. App. 1989) (considering extrinsic evidence in the form of later testimony sufficient to show that warrant was executed under oath); *State v. Keith*, 978 S.W.2d 861, 869 (Tenn. 1998) (allowing extrinsic evidence to show that issuing judge properly swore in affiant); *Smith v. State*, 207 S.W.3d 787, 792–93 (Tex. Crim. App. 2006) (considering extrinsic evidence in the form of postwarrant affidavits from police officer and issuing judge attesting that the judge personally swore in the officer).

Finally, it is worth noting that we did consider a case involving a defective warrant under Missouri law which bears some passing resemblance to the instant case. In *State v. Davis*, an Iowa police officer was duly sworn and signed an application, which was verified by a notary public. 679 N.W.2d 651, 654 (Iowa 2004). Under a Missouri statute, however, a valid warrant must be sworn to and signed by a Missouri peace officer or a prosecuting attorney. *Id.* at 655. A Missouri prosecutor signed the application—but while the application stated that the prosecutor was duly sworn when he signed, there was no verification

and nobody could testify that they observed the prosecutor take the oath. *Id.* at 654.

We held that the defect did not rise to the level of a violation of the Iowa Constitution. *Id.* at 658. In considering the Missouri statute, we noted that while we had rejected the good-faith exception to the exclusionary rule, Missouri courts adopted the good-faith exception. *Id.* at 659. We stated, "We see no reason to give greater protection to the integrity of the Missouri statutes than the Missouri courts do under similar circumstances." *Id.* We therefore held that the evidence was admissible under Missouri's good-faith exception to the exclusionary rule. *Id.*

**E. Application of Iowa Search and Seizure Principles.**

1. *Rejection of extrinsic evidence to establish oath or affirmation.* The State argues that Iowa Code section 808.3 does not require the oath or affirmation be in writing on the application, only that the evidence showing probable cause be in writing. Closely tied to this argument, the State also argues that we should permit evidence extrinsic to the warrant application to show that the affiant had taken an oath or affirmation. I think this is an incorrect reading of the statute.

Iowa Code section 808.3 requires "a written application, supported by the person's oath or affirmation, which includes facts, information, and circumstances tending to establish sufficient grounds for granting the application." We have held that the warrant statute prohibits a court at a suppression hearing from considering oral evidence in support of a warrant because resorting to such oral evidence creates an "intolerable situation" in which all parties must depend on the issuing judge or magistrate's memory as to the contents of the oral evidence, making an accurate and meaningful review of the search warrant impossible.

*Liesche*, 228 N.W.2d at 47–48; *accord Cook*, 498 N.W.2d at 20 (holding that the purpose of Minnesota's statutory warrant procedures was to create a contemporaneous record to allow for a basis of challenging the warrant not dependent on after-the-fact recollections).

The rationale for requiring all evidence of probable cause be within the four corners of the warrant application applies equally to requiring all evidence of the affiant's oath or affirmation being within the four corners of the warrant application. Contemporaneously recorded evidence is the best evidence showing that the affiant was duly sworn because it is the most accurate. *See State v. Paschal*, 300 N.W.2d 115, 117 (Iowa 1981); *State v. Thornton*, 300 N.W.2d 94, 96 (Iowa 1981). After-the-fact recollections as to whether the affiant was duly sworn must, by necessity, be less certain due to the passage of time. *See* 2 David L. Faigman, et al., *Modern Scientific Evidence: The Law and Science of Expert Testimony* § 19:10 (2016–2017 ed.), Westlaw (database updated Dec. 2016). Additionally, the fact that police officers, judges, and magistrates are involved with numerous warrant requests must diminish the recollection of a single such request six months or a year later. *See Liesche*, 228 N.W.2d at 45 (issuing judge, five months after issuing warrant, could not clearly recall the circumstances of issuing the warrant); *Smith*, 207 S.W.3d at 789 (involving a judge not recalling specific warrant, but testifying as to his standard warrant issuing practice).

Were we to allow testimony regarding whether the affiant was under oath, we would be forced to allow for the parties to call the issuing judge or magistrate to testify as to his or her recollections. This is so because a police officer testifying about the oath or affirmation has a strong interest in the warrant being upheld. *See* Paul Benjamin Linton,

*Unrecorded Oral Testimony in Support of a Search Warrant: Is It Admissible? Is It Advisable?*, 14 Loy. U. Chi. L.J. 57, 66 (1982).

Other states which allow for extrinsic evidence on the oath or affirmation often hear testimony from the issuing judge or magistrate. *See, e.g., Milne,* 607 P.2d at 362; *Valdez v. State,* 476 A.2d 1162, 1166 (Md. 1984); *Valencia,* 459 A.2d at 1156 n.2. I believe that judges and magistrates testifying in suppression hearings blurs the independence and impartiality of the judiciary. *See generally* 98 C.J.S. *Witnesses* § 13, at 39 (2013) (opining that when it is reasonably possible to avoid, a judge should not be called as a witness); Timothy E. Travers, Annotation, *Judge as Witness in Cause Not on Trial Before Him,* 86 A.L.R.3d 633, 644–46 (1978) (collecting cases where testimony of judges are excluded because of appearance of impropriety).

It is important to emphasize that the question of whether the proper oath or affirmation was provided is not a binary yes or no question. Whether the oath or affirmation is sufficient includes questions of the content of the oath and questions surrounding the scope of the oath, such as whether the oath applied to all written submissions, some written submissions, or any oral submission. *See Leonard,* 57 Cal. Rptr. 2d at 848–49. Judicial after-the-fact testimony on these issues is not likely to be a productive enterprise, and reliance on the testimony of the officer involved is problematic because the officer will have a strong incentive to ensure that the search is sustained, thereby defeating the basic notion that a neutral magistrate has determined that all the requirements of a valid search warrant have been met.

I find the cases from other jurisdictions offered by the State, and similar cases in support of overruling the motion to suppress, of little persuasive value. Of the jurisdictions which hold that evidence is

admissible when the application for the warrant does not include recorded evidence of an oath or affidavit, two states and the federal courts do so on the basis of the good-faith exception to the exclusionary rule. *See, e.g., Schubert*, 528 F. App'x at 618; *Guzman*, 507 F.3d at 685–86; *Leonard*, 57 Cal. Rptr. 2d at 849. Particularly striking, the California appellate court in *Leonard* stressed that the lack of proof of an oath was not a technical defect, nevertheless, the court was compelled to rule the evidence was admissible under the good-faith exception. 57 Cal. Rptr. 2d at 849.

All other states which hold such evidence admissible do so because these states generally allow extrinsic evidence in support of warrant applications. *See, e.g., Valdez*, 476 A.2d at 1163; *State v. Lindsey*, 473 N.W.2d 857, 859 (Minn. 1991); *Nunn*, 783 P.2d at 26–27; *Keith*, 978 S.W.2d at 869; *Smith*, 207 S.W.3d at 792. Because we do not allow extrinsic evidence nor recognize the good-faith exception, the reasoning supporting the admission of such evidence employed by these cases is simply not applicable in the Iowa context. Likewise, our holding in *Davis* is not relevant to the instant case because the warrant in question was accused of violating a Missouri statute, and we upheld the search on the basis of Missouri's adoption of the good-faith exception to the exclusionary rule. 679 N.W.2d at 659.

The reasoning employed by the cases holding that such evidence should be suppressed is more persuasive. These cases stress that the lack of evidence of an oath or affirmation is not a mere technicality, but a requirement that goes to the heart of the liberty that the Fourth Amendment seeks to protect. *See Brown*, 840 N.E.2d at 421 (holding an oath is an essential prerequisite to obtain a valid warrant); *Valencia*, 459 A.2d at 1153–54 (stressing that upholding a warrant on the basis of an

unsworn affidavit "subverts the reliability of the decisional process[,] . . . undermines the proper discharge of the judiciary's responsibility[,] and clouds the judge's role in authorizing the search"); *Tye,* 636 N.W.2d at 478 (finding that an oath protects citizens from impermissible state action by imposing perjury liability for individuals who give false information); *see also People v. Dinger*, 435 N.E.2d 1348, 1350 (Ill. App. Ct. 1982) ("The necessity of a sworn statement, or one made under oath is not a minor defect which does not prejudice the rights of the accused.").

I would therefore hold that under Iowa Code section 808.3 extrinsic evidence may not be used to show that the affiant of a warrant application swore to or affirmed the contents of the application.

2. *Review of intrinsic facts to support the warrant.* Having concluded that Iowa Code section 808.3 requires that we may only consider evidence within the four corners of the warrant application in determining whether the warrant application satisfies the requirement that the affiant swore to or affirmed the contents of the application, I next turn to the question of whether there is other evidence within the warrant application that is sufficient to show that Detective Furlong swore to or affirmed the facts contained in the warrant application.

I do not believe that there is sufficient other evidence within the four corners of the warrant application to cure the lack of Detective Furlong's signature. I acknowledge that "magic words" are not required to show that the affiant swore to or affirmed the contents of the application, but there must be some approximation of an oath or affirmation subscribed to by the affiant. *See Levine*, 904 F. Supp. 2d at 1130.

Further, I think the best interpretation of Iowa Code section 808.3 is that the oath or affirmation itself should be in writing signed by the affiant. By requiring the written application to be in writing and supported by oath or affirmation, there can be no dispute with respect to the content of the oath or its scope. In *Battani,* we emphasized that the legislative purpose behind Iowa Code section 808.3 was that the magistrate "should have before him *a writing, showing under oath* that there was probable cause." 244 Iowa at 628, 56 N.W.2d at 170 (emphasis added). From the statutory language and the caselaw, it seems clear that the writing (1) must show probable cause and (2) must be under oath or affirmation.

In this case, the issuing magistrate signed a document with a conclusory recital that the application was "[s]ubscribed and sworn to before me." Ordinarily, however, to "subscribe" to a document means to "write (one's name) underneath; to put (one's signature) on a document." *Subscribe, Black's Law Dictionary* (10th ed. 2014). Of course, Detective Furlong did not subscribe to the document by signing it. *See Henry,* 626 S.E.2d at 513 (suppressing evidence when the warrant indicated that the issuing judge relied upon the sworn affidavit of an officer, but the officer did not sign the affidavit purported to have been made by him under oath). The lack of Detective Furlong's subscription to the warrant application in this case suggests that the language in the court order is mere boilerplate. *Cf. State v. Thacker,* 862 N.W.2d 402, 410 (Iowa 2015) (holding boilerplate does not reveal judicial reasoning in sentencing context); *State v. Lumadue,* 622 N.W.2d 302, 304 (Iowa 2001) (holding that an ambiguous boilerplate recital of a waiver of rights in sentencing was not sufficient evidence of waiver); *see also Gorham v. State,* 981 S.W.2d 315, 318 (Tex. Ct. App. 1998) (holding preprinted boilerplate

recitals of knowing plea of guilt signed by trial judge not sufficient when records fail to show the truth of the recitals).

This situation is similar to when an affiant has neglected to sign a document under oath, but a notary public has notarized the document as having been signed under oath—courts reject that the notary public's affirmation suffices to show that the document is valid. *See, e.g., New Millennium Psychological Servs., P.C. v. Unitrin Advantage Ins. Co.*, 929 N.Y.S.2d 830, 831 (App. Term 2011) (finding a psychologist's "affidavit" with no signature attesting that psychologist was duly sworn, but containing notary public's stamp and signature attesting to swearing among other problems, was not a valid affidavit); *In re Schlegel's Will*, 116 N.Y.S. 1038, 1038 (Sur. Ct. 1909) (rejecting a will that was not appropriately signed by testator, but was signed and notarized by notary); *State ex rel. McCurdy v. DeMaioribus*, 198 N.E.2d 60, 61 (Ohio 1964) (rejecting realtor's petition when no qualified person signed the petition as its "circulator," but petition was authorized by notary public); *see also State v. Phippen*, 244 N.W.2d 574, 575–76 (Iowa 1976) (finding a criminal information defective when the police officer who signed complaint indicated he was sworn, but no one signed in the "[s]ubscribed and sworn to before me" jurat); *Miller v. Palo Alto Bd. of Supervisors*, 248 Iowa 1132, 1136–37, 84 N.W.2d 38, 40–41 (1957) (holding evidence insufficient to prove valid oath when jurat was blank and sheriff did not testify he administered oath to commissioners).

I note that I do not believe our holding in *State v. Walker* is relevant to the case before us. 574 N.W.2d 280 (Iowa 1998). In *Walker*, we held that a defendant who has falsely asserted to have served a subpoena could be prosecuted for perjury on the basis of being under oath, even though the notary public testified that she had not

administered the oath to the defendant. *Id.* at 281, 286 (finding substantial evidence such that a jury could conclude the defendant could have been under oath).

The key difference between this case and *Walker* is that the defendant in *Walker,* despite having never been administered an oath, signed the proof of service, which the notary public then properly notarized. *Id.* at 281. We explained it was the "corporal act" of signing at the bottom of the proof of service that called the defendant's attention to the fact that the defendant was asserting that service had occurred under penalty of perjury. *Id.* at 287. Here, there is no evidence on the face of the warrant application showing any similar corporal act that could lead us to conclude that Detective Furlong was formally affirming the contents of the warrant application.

I thus conclude that boilerplate language in the order does not satisfy the statutory requirements of Iowa Code section 808.3 that the application be in writing, supported by oath or affirmation.

**F. Summary.** For the above reasons, I conclude the district court got it right. The district court properly granted defendants' motion to suppress based on the lack of Detective Furlong's signature or any other contemporaneous written record showing that the application was supported by the detective's oath or affirmation.

**III. Failure to Expressly Find Probable Cause.**

**A. Introduction.** The second issue in this case relates to the failure of the magistrate to check the box on the form to indicate whether the magistrate found that there was probable cause to support the search or whether the showing was inadequate. There is no dispute that the magistrate ultimately signed the application. The boxes in the form, however, were left blank.

**B. Caselaw on "Check the Box."** Iowa Code section 808.4 provides that "[u]pon a finding of probable cause for grounds to issue a search warrant, the magistrate shall issue the warrant." The search warrant in this case provided a "check the box" format whereby the magistrate could find either that the information is or is not found to justify probable cause. In this case, the boxes went unchecked, and there was no express finding of probable cause contrary to the plain command of the statute.

We considered a similar flaw in *Beckett*, 532 N.W.2d 751. In the controversial case of *Illinois v. Gates*, the United States Supreme Court adopted a "totality of the circumstances" test for determining the reliability of an informant's information supporting a warrant.[9] 462 U.S. 213, 238–39, 103 S. Ct. 2317, 2332 (1983). In response, the Iowa legislature enacted a statutory provision to ensure that warrants are issued only upon reliable information. *Beckett*, 532 N.W.2d at 754; *see* Iowa Code § 808.3. The more rigorous Iowa statutory test, contained in Iowa Code section 808.3, required the magistrate to make a determination that the information supplied by an informant appears credible either because the sworn testimony indicates that the informant has given reliable information on previous occasions or because the informant or the information provided by the informant appears credible for reasons specified by the magistrate. Search warrants in Iowa thus could not be based on inarticulate "totality of the circumstances" tests when no factor is determinative, everything is relevant, and the ultimate

---

[9]Many state courts have declined to follow *Gates* under state law. *See, e.g.,* *State v. Jones*, 706 P.2d 317, 322 (Alaska 1989); *State v. Cordova*, 784 P.2d 30, 31–32 (N.M. 1989); *People v. Griminger*, 524 N.E.2d 409, 412 (N.Y. 1988); *State v. Jackson*, 688 P.2d 136, 143 (Wash. 1984).

decision turns more on the predilections of the court rather than the specific facts of the case. *See Beckett*, 532 N.W.2d at 754.

In *Beckett*, the magistrate did not make a specific finding that the information given by a confidential informant was credible. *Id.* The state defended on the ground that the materials attached to the warrant indicated that the magistrate made an inquiry into the credibility of the informant and argued that substantial compliance was therefore present. *Id.* We rejected the argument, noting that the magistrate failed to do what the statute directed—namely, provide a reason why the informant or the information provided appeared credible. *Id.* While we gave deference to magistrate determinations, we emphasized that "the issuing magistrate's function be performed in a neutral and detached manner, not serving merely as a rubber stamp for the police." *Id.* at 753 (quoting *Swaim*, 412 N.W.2d at 571).

The state in *Beckett* further argued that the court should adopt a good-faith exception sustaining the search because the officers believed they searched the residence of the defendant. *Id.* at 754. We stated that accepting a good-faith exception when there is a failure to comply with the statute "would be tantamount to judicial repeal of the statute." *Id.* at 755; *see Iowa Dist. Ct.*, 472 N.W.2d at 625.

Just as the statute required a specific finding regarding credibility in *Beckett*, the statute here requires the court make a specific finding. As in *Beckett*, the district court did not make the required finding. Following the approach in *Swaim*, 412 N.W.2d 568, and *Iowa District Court,* 472 N.W.2d 621, as embraced in *Beckett*, we should reject "a rubber stamp" approach to the warrant process, decline to take an approach that is "tantamount to judicial repeal of the statute," and enforce the statutory requirements as written. 532 N.W.2d at 753, 755.

**IV. Conclusion.**

More than a hundred years ago, the United States Supreme Court reminded us in the search and seizure context that illegitimate and unconstitutional practices arise from "slight deviations from legal modes of procedure." *Boyd v. United States*, 116 U.S. 616, 635, 6 S. Ct. 524, 535 (1886), *overruled on other grounds by Warden v. Hayden*, 387 U.S. 294, 87 S. Ct. 1642 (1967). The need to be vigilant is particularly strong in search and seizure law, where "hydraulic pressures" bear heavily on the court to water down limitations on police power. *See Terry v. Ohio*, 392 U.S 1, 39, 88 S. Ct. 1868, 1889 (1968) (Douglas, J., dissenting). Waiving strict search and seizure statutory requirements may strike some as reasonable, but a reasonability standard in the context of search and seizure law is necessarily based on spongy personal judgments rather than sound legal doctrines that can be effectively enforced by each successive generation of lawyers and judges.

Finally, I do not subscribe to the approach to search and seizure law that views its limitation on state power as an obstacle to effective law enforcement—needing to be curtailed and whittled down to meet pragmatic concerns on obtaining convictions. Instead, I subscribe to the approach of courts and lawyers—and I daresay the founders of the Iowa Constitution—who regard search and seizure law as an essential bulwark against arbitrary invasions by the state which often occur in the name of advancing the asserted public interest. *See Johnson v. United States*, 333 U.S 10, 17, 68 S. Ct. 367, 370–71 (1948); *United States v. Di Re*, 332 U.S. 581, 595, 68 S. Ct. 222, 229 (1948).

For the above reasons, I respectfully dissent.

Wiggins and Hecht, JJ., join this dissent.